(86 South. 320)

No. 24068.

STATE ex rel. HARPER v. TEBAULT et al.

(June 30, 1920. Rehearing Denied Oct. 15, 1920.)

(Syllabus by Editorial Staff.)

1. **Habeas corpus** ⬲➡93 — **Whether cause was sufficient for removal of father as tutor of minor son not determinable in proceedings to secure custody.**

Whether neglect of a widower to have certain items included in the inventory of his deceased wife's estate will be sufficient cause for his removal from the tutorship of his minor son, though the question might be determined in a direct action brought for the purpose, is not determinable in the collateral proceeding of the widower, by habeas corpus, to secure possession of the minor son from his maternal grandmother and uncle.

2. **Guardian and ward** ⬲➡25—**Tutorship; action for removal of tutor must be conducted as ordinary suit.**

Under Code Prac. art. 1017, an action for the removal of a tutor must be commenced by petition and citation, and be conducted in the form of an ordinary suit.

3. **Habeas corpus** ⬲➡85(1)—**Evidence insufficient to show father's improper conduct in presence of child.**

Evidence held insufficient to show that a widower, bringing habeas corpus proceedings to secure possession of his minor son from the child's maternal grandmother and uncle, had ever indulged in company with others in intoxicants and improper conduct in the presence of the child.

4. **Habeas corpus** ⬲➡85(1)—**Evidence held insufficient to show abandonment or failure to support by father.**

Evidence held insufficient to show that a widower, seeking habeas corpus to secure possession of his minor son from the child's maternal grandmother and uncle, ever abandoned the child or failed to support him for more than a year.

5. **Habeas corpus** ⬲➡99(1)—**Right of father to tutorship and possession absolute.**

So long as a minor child's father is able and willing to take care of him, and deserving of the trust, his right to the tutorship and possession of the child is absolute.

6. **Habeas corpus** ⬲➡99(1)—**Fact that father intends to remove child from state, when possession secured, immaterial.**

The fact that widower, seeking habeas corpus to secure possession of his minor son from the child's maternal grandmother and uncle, intends to take the child out of the state, is not to be considered on the point of his fitness for tutorship and possession of the child, the removal being his privilege.

Appeal from Civil District Court, Parish of Orleans; Wynne G. Rogers, Judge.

Habeas corpus by the State on the relation of Howard V. Harper, against Mrs. C. Hamilton Tebault and another. From an adverse judgment, relator appeals. Judgment annulled, and defendant ordered to deliver to relator his minor son.

Frank Wm. Hart and S. A. Montgomery, both of New Orleans, for appellant.

Hall, Monroe & Lemann, of New Orleans, for appellees.

O'NIELL, J. Plaintiff appeals from a judgment rejecting his demand for possession of his minor son. The defendants, who have possession of the boy, are his maternal grandmother, Mrs. C. Hamilton Tebault, and a maternal uncle, Grantland L. Tebault.

The child is six years of age. His mother, Mrs. Corinne Tebault Harper, died on the 1st day of October, 1919, at her mother's home, in New Orleans, where Mrs. Harper had been

living nearly five years. Mr. Harper then spent most of his time in New York City, where he conducted a life insurance business. There was no divorce, nor conjugal separation of the couple; and Mr. Harper called and saw his wife and child at her mother's home on his visits to New Orleans. Mrs. Harper died suddenly, while her husband was in New York, and he received an affectionate letter from her on the day of her death.

Mrs. Harper left a written request that her mother and her brother Grantland should raise her child. But the instrument, of course, has no legal effect, because the right to appoint a tutor by will is vested only in the one of the parents who has survived the other. Rev. Civ. Code, art. 257.

The only question presented is whether relator, who is primarily entitled to the tutorship and possession of his child, is, for any of the reasons advanced by the defendants, unworthy of the tutorship and possession of his child, or incapable of taking care of him.

Article 305 of the Civil Code, as amended by Act 82 of 1880, p. 107, declares that no cause for the exclusion or removal from the tutorship of minor children shall be applicable to the father, except the following: First, unfaithfulness of his administration; second, notoriously bad conduct; and, third, abandonment of his children and failure to support and maintain them for more than one year.

Defendants urge all three causes or reasons for their contention that relator should be denied possession of his child.

They contend that he has already shown unfaithfulness in his administration of the child's estate, in the manner in which he directed the notary public to make the inventory.

It appears that in January, 1920, Mr. Harper came to New Orleans and had his wife's succession opened, and was then confirmed and qualified as natural tutor of the child. The property of the succession consisted only of personal property. The separate estate amounted to $722.21, consisting of Liberty Bonds and articles of jewelry found in the bank box of the deceased. The only community property put upon the inventory was a deposit of $1,123.26, in a savings account kept by the deceased, in a New Orleans bank, one-half of which sum was inventoried as belonging to the child.

Mr. Harper at that time owned an automobile, which he had bought during the marriage, and which therefore belonged to the marital community; and he had a small balance to his credit in a bank in New York, which deposit also belonged to the marital community. He neglected to have the notary public include in the inventory the child's half interest in these two items of community property. He also failed to have the notary public include in the inventory an indebtedness alleged to have been due by him to his wife, for the value of a diamond ring, said to have been worth $1,500, which his wife had lent him, and which he had pledged as security for a debt that he owed. The evidence is that, after lending the ring to her husband, for the express purpose of pledging it and paying any debt or debts that he might owe, Mrs. Harper agreed that the ring should be a gift to her husband if he should be unable to return it. When the notary public was making the inventory, Mr. Grantland L. Tebault, defendant herein, demanded that the claim against Mr. Harper for the value of the ring should be included in the inventory as belonging to the separate estate of the deceased. In response to the demand, Mr. Harper declared that the ring had been given to him by his wife, that he had pledged it for a debt, had not redeemed it, and was therefore unable to return it.

[1, 2] Both parties who are defendants herein were present during the making of the

STATE v. TEBAULT

inventory, and, though Mr. Grantland L. Tebault made several suggestions and complaints with regard to items which he contended should be inventoried as property of the succession, neither of the defendants contested the right of Mr. Harper to be confirmed as natural tutor of his child. We doubt that the neglect of Mr. Harper to have the items referred to included in the inventory of his wife's estate was a deliberate act of maladministration, or would be a sufficient cause for excluding or removing him from the tutorship of his child. Whether it would be sufficient cause for his removal from the tutorship might be determined in a direct action brought for that purpose, but not in this collateral proceeding. An action for the removal of a tutor must be commenced by petition and citation, and be conducted in the form of an ordinary suit. Code of Practice, art. 1017.

There is no evidence of notoriously bad conduct on the part of relator. Defendants refer to one instance in which it was reported to them that relator was guilty of unbecoming conduct in presence of the child; but our conclusion, from the evidence in the record, is that the report was not well founded. It appears that in February, 1920, Mr. Harper came to New Orleans, called at the residence of Mrs. Tebault, where the boy was living, and took him out riding in an automobile. There were two other men and the wife of each of them in the automobile, besides the chauffeur. The two couples were strangers in the city, guests of the same hotel at which Mr. Harper stopped. The party visited a respectable pleasure resort and had refreshments, and after the two married couples had returned to the hotel, Mr. Harper returned the boy to his grandmother's home. Thereupon it was reported to Mrs. Tebault that the party of pleasure seekers had indulged in intoxicating drinks and improper conduct in presence of the child. Her be- lief in the report seems to have been her main reason for refusing Mr. Harper's request thereafter that the child be returned to him.

[3] It is sufficient to say, without going into details, that the story of indulging in intoxicants and improper conduct in presence of the child was a very improbable one and has been satisfactorily contradicted.

[4] There is no proof that Mr. Harper ever abandoned his child or failed to support him for more than a year. During the five years that Mrs. Harper lived at her mother's home, Mr. Harper sent her a remittance every month for her support and the support of the child. For a time the remittances were $75 a month, and later they were $100 a month. Besides, Mr. Harper allowed his wife an open account in several stores in New Orleans, and paid her bills. Mrs. Tebault, being possessed of considerable means, did not charge for the board or lodging of her daughter or grandchild; but that fact does not reflect discredit upon Mr. Harper.

On receipt of the telegram announcing the death of his wife, Mr. Harper came immediately to New Orleans. Before returning to his business in New York, he placed his son in the care and keeping of Dr. C. Hamilton Tebault, another maternal uncle of the child, and prominent physician in New Orleans. There the child remained a month or longer, and was then taken, either by Dr. Tebault or by a nurse in his employ, to the home of Mrs. Tebault. It is said in the answer to this suit that the child appeared at Mrs. Tebault's front door unattended, rang the door bell, and announced that he had been sent there to remain as long as it pleased him to stay. But the responsibility for the child's being sent to the home of Mrs. Tebault has not been put upon Mr. Harper.

[5] Mrs. Tebault is affectionately attached to her grandchild, and, because of her financial means and high social standing, is per-

haps better able than the child's father is to take care of him. But so long as the child's father is able and willing to take care of him, and is deserving of the trust, his right to the tutorship and possession of his child is absolute.

[6] The evidence shows that Mr. Harper's income is about $5,000 a year. He has no home of his own, but is able and willing to provide one. His mother is to live with him and care for his child. The fact that he intends to take the child out of the state is not to be considered, because that is his privilege. It does not appear that to surrender the boy to his father will endanger the child's welfare in any way, or that the father is either incapable or unworthy of the trust.

The judgment appealed from is annulled, and it is ordered, adjudged, and decreed that the defendants deliver to relator his minor son, Howard Hamilton Tebault Harper, and that defendants pay the costs of this suit.

MONROE, C. J., takes no part.