For the reasons assigned, the judgment appealed from is affirmed.

---

(106 So. 534)

No. 25451.

## DEAN v. MIZELL.

(Nov. 30, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Parent and child &copy;=>2(2)—Agreement by father, revocable at his option, surrendering care and custody of minor children to another, held not conclusive in habeas corpus proceedings.**

Agreement by father, revocable at his option, surrendering care and custody of minor children to another, is not conclusive in habeas corpus proceeding to regain custody of such children.

2. **Parent and child &copy;=>2(2)—Father, if worthy, has better right to custody of children as against maternal grandparents.**

If father is worthy of trust, and will not neglect children or expose them to improper influences, he has better right to their custody as against maternal grandparents.

3. **Parent and child &copy;=>2(2)—Father failing to protect children against cruelty of stepmother held not entitled to their custody.**

Regardless of fact that father was person of good character, because of his failure to protect minor children against cruelty of their stepmother he was not entitled to their custody as against their maternal grandparents.

Appeal from Fifteenth Judicial District Court, Parish of Allen; Thomas F. Porter, Jr., Judge.

Habeas corpus proceeding by Marvin P. Dean for the custody of his three minor children against Simon Mizell. On the marriage of the minor, Gladys Dean, during pendency of the suit, she passed out of the case. From judgment dismissing plaintiff's demand, and awarding custody of the two other minors, plaintiff appeals. Affirmed.

J. Hugo Dore, of Ville Platte, for appellant.
Williams & Reed, of Oakdale, for appellee.

BRUNOT, J. This is a proceeding by habeas corpus for the custody of three minor children, Gladys, Thyra, and Dorris Dean, the issue of the marriage of plaintiff and his first wife.

From a judgment dismissing plaintiff's demand and awarding the custody of the minors, Thyra and Dorris Dean, to their maternal grandfather, plaintiff appealed.

While the suit was pending in the lower court, Gladys Dean was married, and passed out of the case.

[1] From the record it appears that on March 25, 1918, in a proceeding in the juvenile court for the custody of the minors named, a judgment was rendered awarding the custody of Gladys Dean to her maternal grandparents, and the custody of Thyra and Dorris Dean to their father, the plaintiff in this suit. Following the rendition of this judgment plaintiff entered into two agreements with the defendant, in both of which plaintiff surrendered the care and custody of the two last named minors to the defend-

ant. We do not attach any importance to these agreements, because they are revocable at the option of the father.

The record shows that the plaintiff is a man of moderate means, good moral character, and that he loves his children. Several of the witnesses say that he is "every bit a gentleman," and their testimony is not rebutted. On the other hand, the character and reputation of the maternal grandparents of the minors for sobriety, morality, Christian precept and practice, and congenial and elevating home environment is shown to be unexcelled in the community in which they live.

The record discloses that plaintiff married a second time. The children were then in the custody of the defendant. Plaintiff took them to his home, where they remained, until after a series of brutal and inhuman castigations by their stepmother they were compelled to flee from the home, late at night, to save the life of Gladys from a vicious assault made upon her by the stepmother armed with a butcher knife. In making their escape on this occasion they were aided by their father, but their father permitted them to go upon the street penniless and unprotected, to be taken in and cared for by a relative. Later an uncle took them to their maternal grandparents.

Mr. A. J. Singletary testified that he was friendly with all of the parties; that he saw severe whip marks upon one of the children, and marks upon another, which appeared to have been made by a switch, and he concludes his testimony with the following statement:

"I do not think it would be safe for these children to live in the house with Mrs. Dean."

Gladys Dean testified as follows:

"Well, she whipped me with a stick, and bruised me mighty bad, * * * and one time one of my sisters run away, and she said I told her to run away, and I told her that I told Thyra not to run away, and this made my stepmother mad. She said I did tell her to run away, and she threw me down on the floor, and began beating me with her fist. Then she made me get up and took me in the bathroom and whipped me again, and made me sit on my knees till she went and got Thyra. Then she brought Thyra back, and then she whipped Thyra mighty bad. One night she said that I did not iron my clothes good. * * * Then father came home, and she told him about it. * * * Father went up town to get a hair cut, and she went with him. Then Thyra, Dorris, and myself stayed at home and went to bed. Then father and his wife came back home, and we were in bed. She was still mad at me, and wanted father to whip me. He wouldn't whip me, and she ran and jumped on me with a knife. Then father ran and held her hand that had the knife in it, and she beat me with her other fist. Then father told Thyra, Dorris, and myself to put on our clothes and * * * go to Aunt Mamie's (Mrs. Dozier's), and he was going with us, but she would not let him. We went ourselves. It was about 10 or 11 o'clock. The knife she had in her hand was a butcher knife. * * * *"

Thyra and Dorris Dean were 8 and 6 years old respectively. Thyra was permitted to testify, and she corroborated the testimony given by Gladys. Isom Mizell testified to the marks and bruises upon the children, and, with reference to what the plaintiff had told him about his wife, said:

"He said that Dr. Scott said she was in ill health and had a disease, and it was very dangerous for the children to be with her, as she was liable to take a spell at any time and kill them. * * * *"

Dr. Scott, a witness for the plaintiff, testified that on one occasion he was called in from the street to treat Gladys Dean for stripes and bruises, indicating severe punishment. There were stripes and dark places on her hips and back as wide as two fingers, and down her legs, as if she had been hit with hickory, and some of the stripes were bleeding at the time. This witness did not rebut the statement of Isom Mizell, but merely declined to express an opinion, at that time, as to the danger of returning the children to the custody of their father.

The testimony of C. C. Smith relates only to his opinion of the father of the children as a proper person to take care of them. He does not know any of the facts. Mr. Goodson's testimony is to the same effect. Mr. Davion was not as certain as to the father's fitness to care for his children as were the two witnesses last named. His answer to the question was, "I know that he has always been all right." The plaintiff and his wife are the only two witnesses who deny and attempt to refute the strong, positive, and convincing testimony given by 9 or 10 witnesses called by defendant. Moreover, some of the important facts and circumstances testified to by them are corroborated by Dr. Scott and C. C. Smith, the only two disinterested witnesses called by plaintiff who testified to any of the facts of the case.

The record convinces us that, while plaintiff is a good man, and his earnings are sufficient to enable him to properly care for his children, he is under the domination of his wife, and that Mrs. Dean is the victim of visitations of apparently causeless and violent fits of uncontrollable temper. When these visitations occur, her animosity towards her stepchildren is so pronounced that it would be inhuman, if it did not actually endanger their lives, to leave them in a situation which would invite a recurrence of the harsh treatment from which they fled to their grandparents for protection. Plaintiff cites State v. Johnson, 149 La. 89, 88 So. 698. That case merely decided a bare legal proposition, and held that—

"As between the father and maternal grandparents, the former has the better legal right to his child."

[2] In State v. Tebault, 147 La. 889, 86 So. 320, the court held that the father's right to the possession of his child is absolute, provided he is deserving of the trust. In Ex parte Lincoln, 128 La. 278, 54 So. 818, the same ruling is announced, unless the court is satisfied that the father will neglect the children or expose them to improper influences, in which case their custody will be given to others. The jurisprudence is fixed, and it means that, if the father is worthy of the trust, and will not neglect his children or expose them to improper influences, he has the better right to their custody.

[3] Does the father in this case measure up to those standards? Can it be said that a father has not neglected his child, if, without protest or interference, he permits its stepmother, at will, and in an ungovernable fit of temper, to cruelly and inhumanly beat and wound it? Under the circumstances detailed, ad nauseum, by the witnesses in this case, can it be truthfully said that plaintiff is worthy of the custody of his minor children? We think not. The mere fact that the father is a good man and has sufficient means to properly feed and clothe his children and does not himself expose them to improper influences is of little consequence, when he is chargeable with such gross omissions of duty towards his children as this record discloses, and where it does not appear that he has made a serious effort to remedy the situation and make it possible for his tender offspring to enjoy life under his roof in peace and safety.

The trial judge must have viewed this case as we do. We think he rendered a just and righteous judgment, and it is therefore affirmed, at appellant's cost.

OVERTON, J., recused.