HAWTHORNE, Justice.
 

 Relatrix and appellant, Mrs. Elva Rambin Graham, instituted this suit seeking the custody of her minor son, Clarence Wayne Garrard, born of her prior marriage with Clarence S. Garrard, against the paternal grandparents of the child Mrs. Jessie M. and Clyde Garrard. After trial on the-merits, relatrix’ demands were refused and her suit dismissed. From this judgment she has appealed to this court.
 

 Relatrix (now the wife of J. D. Graham) married Clarence S. Garrard in Bossier Parish, Louisiana, on January S, 1936. Of this union one child was born on May 19, 1937, Clarence Wayne Garrard, who was approximately eight years of age at the time this case was tried in the lower court on February 5, 194S. Relatrix and her first husband, Clarence S. Garrard, were divorced in September, 1938, in Shreveport, Louisiana. The mother was given the custody of the child in the divorce proceedings, but within a month or two thereafter the child whose custody relatrix now seeks was taken by his father to the home of Mr. and Mrs. Garrard, the child’s paternal grandparents, respondents in this suit, where the child has remained ever since, or for a period of almost 10 years. The Garrards also lived in Shreveport and were still residing there at the time of the trial.
 

 The testimony is conflicting as to why the child was placed in the custody of his paternal grandparents, there being evidence in the record that it was due to his mistreatment by the mother, but this is denied by her. In view of subsequent events, however, in our opinion the reason is immater
 
 *321
 
 ial, for the evidence clearly shows that she acquiesced in, and made no objection to, the father’s taking the child and placing him in the home of Mr. and Mrs. Garrard.
 

 After the divorce relatrix worked at various drug stores in the City of Shreveport for a nominal weekly wage until a year or so after her second marriage. On December 5, 1939, relatrix married J. D. Graham. She continued to make her home in Shreveport until some time in 1941, when she and her husband moved to Fort Worth, Texas. After leaving Shreveport, her husband worked in various cities, including Fort Worth, Dallas, Oklahoma City, and Cleveland, Ohio, until about August, 1944, at which time he and the relatrix moved to Tyler, Texas, where he had employment as manager of a shoe store. They were still residing in Tyler when this suit was instituted. Of relatrix’ marriage to Mr. Graham a daughter was born who was approximately two and one-half years old at the time of the trial.
 

 Relatrix’ second husband was earning $25.00 per week at the time of their marriage. Subsequently he was employed by several different companies, and his salary increased steadily. At the time the suit was instituted, he was earning over $300.00 a month.
 

 Clarence S. Garrard, divorced husband of relatrix and father of the child, entered the Armed Forces of this country on March 10, 1942, and was killed in Belgium on December 25, 1944. On Sunday, January 21, 1945, his parents, respondents herein, shortly after being notified of his death, went to Tyler to request of relatrix a waiver of her right to be appointed tutrix of her minor son, so that Clyde Garrard, the grandfather, could be appointed tutor to collect for the minor government insurance carried by the deceased father in favor of the minor. Relatrix agreed to sign a certain document which they presented to her in connection with this matter, but, upon being informed that her signature to the document would not be legal if placed thereon on Sunday, she agreed to sign the document the next day and mail or take it to respondents in Shreveport. . Respondents heard nothing further from relatrix until this suit for the custody of the child was filed some nine days later, on January 30, 1945.
 

 Relatrix in her petition averred that she was not interested in obtaining the insurance or other money to be paid by the United States government to the minor child; that she did not need the money for the support and maintenance of the child during his minority; that she was willing for the court to order the money placed in a trust fund for the benefit of the child and to be paid him at such time as he should enter college or reach the age of majority. There is no evidence in the record showing anything to the contrary.
 

 The little boy whose custody is the subject of this controversy has been in the care and under the custody and control of his paternal grandparents since he was
 
 *323
 
 about 16 months old, or for a period of approximately eight years at the time the present suit was instituted (now about 10 years), and he has all this time depended upon his grandparents for parental love and care. At the time this suit was instituted, each of the grandparents was 48 years of age, and Mr. Garrard had been established in the retail ice business for 26 years. The trial judge, who saw the child and heard the testimony of all witnesses, pointed out in his reasons for judgment that the child was well cared for, loved, properly treated, well mannered, happy, contented, and well dressed. From our reading of the record we are convinced that these grandparents loved this child as if he were their own.
 

 During the many years while these respondents have had the care and custody of the child, relatrix has contributed very little for his care and maintenance. However, she did on special occasions, such as Christmas and birthdays, send him gifts. It is true that for a few years after her divorce from the father of the child she was financially unable to contribute anything to his support or maintenance, and, if this fact alone prevented her from claiming his custody, the courts would not now construe it against her and wquld not deprive her of the child’s custody. She stated that in recent years she did not contribute anything to the child’s care and maintenance because she was of the opinion that he was being well treated and properly provided for and was not in want.
 

 Under the law of this state, the parent has a superior right to the custody of his or her minor children over third persons, and relatrix relies principally on this rule of law to obtain the care and custody of the child in the instant case. As pointed out in numerous decisions of this court, however, this right of the parent is not unquestionable or absolute, but must yield to the superior right of the State to deprive a parent of the care and possession of the child in the event the physical, moral, or mental welfare of the child requires it. State ex rel. Stockstill v. Spiers et ux., 170 La. 454, 128 So. 275; State ex rel. Pitre v. Lefort, 179 La. 919, 155 So. 435; State ex rel. Castille v. Cooke, 183 La. 404, 164 So. 153; State ex rel. Guinn v. Watson, 210 La. 265, 26 So.2d 740, and authorities therein cited.
 

 The trial judge in his reasons for judgment pointed out: “One thing that impressed the court from the evidence in the case (as well as the attitude of relatrix on the stand) that there was a lack of motherly affection by relatrix for the minor, as the court is able to appreciate or understand mother love. * * * ”
 

 We, like the trial judge, are impressed by the mother’s apparent lack of interest in the welfare of the child and her indifference to him over a long period of time. Although relatrix remained in Shreveport for about two years after the child had been taken to live with his grandparents, she saw him infrequently and dis
 
 *325
 
 played little interest in his welfare. So far as the record shows, after she left Shreveport she never wrote to inquire as to the child’s happiness, well-being, financial situation, and health; certainly she was not in close correspondence with Mr. and Mrs. Garrard, and, if she heard frequently of the child through her mother, who lived in a small town near Shreveport, or her sister, who lived in Shreveport, the testimony does not bring out this interest on her part. She saw the child during the years spent away from Shreveport on infrequent occasions only, when she returned to visit her mother. The fact that she has given no valid reason for this lack of interest, and the fact that she herself was on good terms with the Garrards and had free access to her child at all times clearly indicate to us that the trial judge was correct in his appreciation of the evidence in this case.
 

 The child is well,_ happy, and contented with his grandparents, who have given him the love and affection of a real father and mother, and we believe that his happiness and welfare — the paramount considerations in this case — would be best served by leaving him in their care.
 

 This court has said that reasonable latitude must be left to the trial judge in matters affecting the welfare of children, and that his judgment based upon the facts disclosed in any case is entitled to great weight. State ex rel. Johnson v. Ashmore, 197 La. 971, 2 So.2d 897; State ex rel. Guinn v. Watson, supra, and authorities therein cited.
 

 For the reasons assigned, the judgment appealed from is affirmed at relatrix’ costs.
 

 FOURNET, J., dissents.
 

 McCALEB, J., concurs in the decree.
 

 O’NIELL, C. J., absent.
 

 BOND, J., dissents with written reasons.