PONDER, Justice
(dissenting).
The relators, Hubert M. Deason and his wife, in these habeas corpus proceedings are seeking to recover the custody of their minor child, Larry Wayne Deason.
*970 The relators, the parents of three small children ranging in age from one to five years of age, realizing that another child was to be born of their marriage decided to place the infant, upon its birth, in the hands of reliable persons for adoption. Prior to the birth of the infant, Mrs. Deason negotiated with an attorney, with the view of placing the infant in a good home, and at the conclusion of these negotiations she agreed to give custody of the child, upon its birth, to Maurice W. McWilliams and his wife for adoption. The infant was born on October 6, 1953 and turned over to the McWilliams on the next day. On October 10, 1953, Mrs. Deason executed a notarial act wherein she gave consent to its adoption. A similar instrument was signed by Mr. Deason in South Carolina, where he was stationed as a member of the naval forces. Upon being informed that a petition for adoption was going to be filed, Mrs. Deason made an effort to regain the custody of the infant. On refusal of the respondents to return the child to its parents, this proceeding ensued. The petition for adoption was never filed.
After evidence was adduced in these proceedings, the lower court gave judgment awarding the custody of the infant to the respondents. The relators have appealed.
We find that the notarial acts executed by the Deasons giving the custody of the infant to the respondents and their consent to its adoption is captioned: “An Act of Surrender of Minor Child For Purposes of Adoption.” It is contended by the relators that these notarial acts are merely the granting of their consent to adoption which could be withdrawn prior to the filing of the petition for adoption.
It is well settled that the consent of the parents of a child sought to be adopted is essential. Furthermore, the consent once given may be withdrawn at any time prior to the final decree of adoption. State ex rel. Simpson v. Salter, 211 La. 918, 31 So.2d 163; Green v. Paul, 212 La. 337, 31 So.2d 819; State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760.
We are not presented in this case with an act of surrender of the custody of a child to an agency for the purpose of adoption, nor are we presenEed with a case where the child has been declared abandoned by the juvenile court as set out in LSA-R.S. 9:401-405. If we were to consider the notarial acts in the light that they were steps taken in an adoption proceeding, there is no question but that this consent could be withdrawn under the authorities previously cited. If we consider the case as purely one of custody, the question then arises as to the fitness of the relators.
The paramount right of the parents to the custody of their child cannot be interfered with except where it is proven that the parents are morally unfit to have its custody and control or where the welfare of the child would be imperiled. Dean v. Mizell, 159 La. 975, 106 So. 534, 535; Heitkamp v. Ragan, 142 La. 81, 76 So. 247; *972 State ex rel. Perdue v. Carkuff, 182 La. 920, 162 So. 729; State ex rel. Burleigh v. Savoie, 185 La. 985, 171 So. 98; State ex rel. Monroe v. Ford, 164 La. 149, 113 So. 798; Kearney v. Steel, 121 La. 215, 46 So. 215, 16 L.R.A.,N.S., 1004; Ex. parte Lincoln, 128 La. 278, 54 So. 818; State ex rel. Martin v. Talbot, 161 La. 192, 108 So. 411; State ex rel. Bethany v. Corley, 172 La. 266, 134 So. 87.
All parties to this suit, both relators and respondents, bear excellent reputations. There is no evidence to show any moral unfitness on their part. The relators have a comfortable home and their three other children are well cared for.
The respondents contend that the relators have in effect abandoned the child and have shown no interest in its welfare. The infant is not neglected or delinquent. The actions of the relators show that they were interested in the welfare of the child when they consented to place it in a good home where it could be well taken care of. The respondents lay great stress on the fact that the relators did not visit the child or show any interest in it until they sought to recover its custody and that their action in seeking to regain custody was prompted by Mrs. Deason’s mother. Mrs. Deason testified that the reason that she wanted to give the custody of the child to the McWilliams was because she was in bad health at the time and feared that she would not be able to give it proper care and take care of her other small children. At that time her husband was in the naval forces and stationed away from home. The fact that Mrs. Deason did not wish to see the child, if it was to be adopted by the respondents, is understandable and of no particular importance because it is only reasonable to assume that she would not want to become too much attached to it.
The respondents lay great stress on the fact that Mrs. Deason did not want to have any more children, but this may be true in many cases and could not be considered as a lack of interest after the child was born. Whatever attitude Mrs. Deason may have had at the time she gave the child to the McWilliams, these very proceedings show that she now wants her child back. This is not a case where the parents are seeking to recover the custody of a child from persons who have had it for a long period of time or where the child is old enough to become attached to them or other members of their family. Moreover, it would be to the best interest of< the child for it to be reared with its brother and sisters. Parents should not be denied the custody and control of their children except for some grave reason.
There is no substantial reason to deny the parents the custody of this child. As I understand it, the statements in the decisions of this court that the parents’ right to the custody of their child must yield to the best interest and welfare of the child are restricted to situations where the parents are unfit or the child would be *974 subjected to improper influences. The evidence does not show that such a situation is presented in this case.
The majority opinion lays great stress on the letter of November 12, 1953, written by Mrs. Deason to Mrs. McWilliams, and while it refers to the letter of February 1, 1954, written by Mrs. Deason to the attorney, Mr. Simms, it does not reflect the pitiful appeal she made therein for the return of her child. This letter was written before the present proceedings were instituted and portrays the anxiety of the mother for the return of her child. I do not believe that I could be justified in saying that the mother did not want her child under the evidence in this case. Furthermore I do not believe that it is for the best interest of the child to give its custody to the respondents because it can never be adopted by them in the absence of the relators’ consent.
The two cases relied upon by the - respondents, State ex rel. Graham v. Garrard, 213 La. 318, 34 So.2d 792 and State ex rel. Guinn v. Watson, 210 La. 265, 26 So.2d 740, are not in point and involve entirely different factual situations and were cases where the child was left in the custody of the people over a long period of time, and where it might upset the child to change its custody. In this case the child was only six months of age when this suit was instituted.
For the foregoing reasons I respectfully dissent.