LANDRY, Judge.
This is a habeas corpus proceeding in which the mother of a five-year-old girl, Donna Jo Hebert, is seeking to regain custody of her child previously surrendered to Mr. and Mrs. Ashton Knight, respondent to the writ of habeas corpus and relators in this application. For greater clarity the mother, Barbara Hebert, will hereinafter be referred to as “plaintiff” and the Knights will hereinafter be referred to as “defendants”. The custody of the afore-named child is the sole issue before the court.
The district court, after hearing the evidence (in two separate trials as will hereinafter be explained), granted custody of Donna Jo to the mother and defendants made application to this court for writs.
We granted the requested writs because writs were the only remedy available to defendants considering Article 3943, Louisiana Code of Civil Procedure, LSA, provides there shall be no suspensive appeal from a judgment awarding custody of a person.
Defendants complain the learned trial court erred in two respects, namely: (1) in holding contrary to the law as pronounced in State ex rel. Paul v. Peniston, 235 La. 579, 105 So.2d 228 and State ex rel. Guinn v. Watson, 210 La. 265, 26 So. 2d 740, and (2) in considering a report prepared by the Department of Public Welfare despite defendants’ objection the report was inadmissible as the party who compiled same was not produced as a witness and made available for cross-examination.
Considering first defendants’ complaint regarding the introduction in evidence of the allegedly inadmissible re *128 port of the Department of Public Welfare, we note that as a general rule in adversary or contradictory proceedings under our system of law the court’s investigative powers are strictly limited and the court may only consider such evidence as is produced and properly offered in evidence by one of the litigants permitting the privilege of full cross-examination to the opponent. In certain instances, however, particularly in cases involving juveniles (where the State has an interest in the general welfare of the child), this rule has been somewhat relaxed. It has been previously held that a judgment determining the custody of a child is permitted to take cognizance of records that may be in his cortrt and which touch or shed light upon the subject matter. The rule, it seems, goes even further in holding that the trial court may conduct an independent investigation into circumstances surrounding the lives, habits and environment of the persons seeking custody insofar as said factors would affect the best interest of the child whose custody is involved. See In re Caronna, 197 La. 494, 2 So.2d 1.
In the case at bar there was available to the trial court not only the disputed report of the Welfare Department but also the record in the trial of the first habeas corpus proceeding before the same judge in which former proceeding plaintiff was represented by other counsel. It further appears that in the reasons for judgment handed down by the trial court appearing in the record, the decision herein was based upon consideration of evidence other than the disputed document as we note the following observation therein:
“Even without the report of the Department of Public Welfare we would have reached the same conclusion as we have reached in this case.”
In view of the foregoing and the rule of In re Caronna, 197 La. 494, 2 So.2d 1, we find the trial court properly admitted the controversial report in evidence.
Industrious counsel for defendants contends the trial court ignored the ruling in State ex rel. Paul v. Peniston, supra, which counsel suggests is a departure from prior jurisprudence in that it establishes a new rule in custody cases.
Prior to the decision in State ex rel. Paul v. Peniston, 235 La. 579, 105 So.2d 228, the jurisprudence of this state was settled to the effect that the courts are without power or right to interfere with a parent’s authority over his or her children unless satisfied by solid and substantial reasons that the parent will neglect, abuse or expose them to harmful influence in which case the paramount parental right to custody must yield to the superior right of the State to deprive the parent of the right of custody if the best interest and welfare of the child so requires. Ex parte Lincoln, 128 La. 278, 54 So. 818; State ex rel. Martin v. Talbot, 161 La. 192, 108 So. 411; State ex rel. Bethany v. Corley et ux., 172 La. 266, 134 So. 87.
An excellent summary of previous adjudications on the subject matter under discussion is contained in State ex rel. Martin v. Garza et al., 217 La. 532, 46 So.2d 760, 761, wherein the Supreme Court with Chief Justice Fournet as the organ of the court, observed:
“In such cases the sole question for the court’s consideration is whether the parent by his or her conduct has forfeited his or her parental right to the child, for it is the well settled jurisprudence of this state that the courts are not authorized to interfere with a parent’s authority over his or her children, except if the court is satisfied that he, or she, will neglect them, or expose them to improper influences, in which case the paramount interest which society has in seeing to it that they be well taken care of and properly brought up would justify the court in making some other disposition of them. Ex parte Lincoln, 128 La. 278, 54 So. 818; State ex rel. Martin *129 et al. v. Talbot et ux, 161 La. 192, 108 So. 411; State ex rel. Bethany v. Corley et ux, 172 La. 266, 134 So. 87, and the burden is on those resisting the parent’s right to show his or her disqualification or unfitness to have the custody of the child. State ex rel. Burleigh v. Savoie, 185 La. 985, 171 So. 98; State ex rel. Perdue v. Carkuff, 182 La. 920, 162 So. 729; Heitkamp v. Ragan, 142 La. 81, 76 So. 247. In the case of Heitkamp v. Ragan, supra, this Court quoted with approval the holding in Hibbette v. Baines, 78 Miss. 695, 29 So. 80, 51 L.R.A. 839, as follows: ‘and while we are bound also to regard the permanent interest and welfare of the child, it is to be presumed that its interests and welfare will be best promoted by continuing that guardianship which the law has provided until it is made plainly to appear that the father (or mother) is no longer worthy of the trust. The breaking of the ties which bind the father (or mother) and the child can never be justified without the most solid and substantial reasons.’ (Brackets ours.) 142 La. at page 84, 76 So. at page 248.
“We think, therefore, that the trial judge erroneously based his decision in the matter (apparently reluctantly) on his appreciation of the best interest of the child, without giving consideration to the paramount right of the mother to her child, nor did he give consideration to the attempt made by the respondents to establish the relator’s unfitness to have the custody of her child.
* * jjí * * *
“The suggestion by the respondents that they have given the child care and attention, have treated him as their own, learned to love him, and that the child has learned to know and love them as his parents, beside the fact that they own their own home and are better able to care for the child than the relatrix, does not authorize the court to deprive the mother of her parental right and authority over the care and custody of her child. State ex rel. Perdue v. Carkuff, supra; Heitkamp v. Ragan, supra. In the latter case this Court aptly observed: ‘A judge has some discretion over the care and custody of children; but it has to be exercised on solid and substantial grounds. Nor can the fact that other people are attached to the child, or that the child is attached to other people, or that the ability of other people can better provide for the care, etc., of the child deprive the father (or mother) of his (or her) parental right and authority to have the care and custody of his (or her) own child. * * * “The discretion to be exercised is not an arbitrary one, but in the absence of any positive disqualification of the father (or mother) for the proper discharge of his (or her) parental duties, he (or she) has, as it seems to us, a paramount right to the custody of his (or her) infant child, which no court is at liberty to disregard. * * * ” ’ ” (Brackets ours.) 142 La. at page 83, 76 So. at page 247. See, also, Ozanne v. Delile, 5 Mart., N.S. 21.
Before State ex rel. Paul v. Peniston, supra, in each instance in which the Court deprived parents of custody of a child, the judgment was founded on the conclusion the best interest and welfare of the child made such drastic action necessary. State ex rel. Graham v. Garrard, 213 La. 318, 34 So.2d 792; State ex rel. Deason v. McWilliams, 227 La. 957, 81 So.2d 8; State ex rel. Guinn v. Watson, 210 La. 265, 26 So.2d 740.
Esteemed counsel for defendants readily concedes the law of this state to be that before a mother may be deprived of her natural and inherent right of custody she must be proven unfit and further that the law presumes the welfare of the child is best served by the mother until she be *130 proven unsuitable or it be shown the best interest and welfare of the child will be endangered by continued association with the mother.
Astute counsel for defendants further contends, however, that State ex rel. Paul v. Peniston, supra, establishes a different rule in cases wherein a mother seeks to regain custody of a child voluntarily surrendered to a third party or foster parents as distinguished from those instances in which a mother is sought to be deprived of custody of a child actually in her possession. In this respect, ingenious counsel for defendants submits the Peniston case is authority for the proposition that in those cases in which a mother’s incompetence has been established by her abandonment of her child, the interest of the State in the welfare of the child legally justifies shifting the burden of proof to the mother and requiring, as a condition precedent to restoration of custody, that the mother prove not only her moral fitness but also that the best interest of the child will be served by removing the child from the custody of the third party or foster parents. It further appears able counsel for defendants interprets the Peniston decision as holding that in the case of a mother seeking return of custody of a child from foster parents, the question of the mother’s inherent right to custody is subordinated to the issue of the best interest and welfare of the child. The ultimate projection of counsel’s argument is that in such instances, if by comparison the child would receive greater spiritual, cultural and material advantages by remaining with the foster parents, the right of the mother to custody is relegated to a position of secondary or inferior importance and the party capable of furnishing the more substantial physical and material benefits should be awarded custody on the theory that such result serves and promotes the best interest and welfare of the child.
The effect attributed by esteemed counsel to the ruling in the Peniston case, supra, has caused us to scrutinize said decision most carefully and diligently. After prolonged consideration thereof we are constrained to conclude able counsel for defendants is mistaken in his interpretation of the cited decision.
The facts in the Peniston case (as related in the majority opinion) were that the parents of a two-year-old child placed their offspring with a paternal aunt when it was discovered that the mother had contracted tuberculosis and her hospitalization was imperative. Two years later the mother was released from the hospital but for a period of seven years following her discharge therefrom neither the mother nor father took any positive action to regain the child’s custody although they were physically and financially able to support her.
We note in the Peniston case language which recognizes that the circumstances involved therein are similar and analogous to State ex rel. Graham v. Garrard, 213 La. 318, 34 So.2d 792. We find in the Peniston case no language indicative of intention to establish the rule that a parent seeking to regain custody must necessarily bear the burden of proof or that merely because a parent is attempting to regain custody from a foster parent to whom the child was voluntarily entrusted, the physical welfare of the child supersedes entirely the parental right to custody. Our interpretation of the decision is that it simply holds that, in the event of abandonment by a parent over a long period of time, custody of foster parents will not be disturbed in a contest between the natural parents and foster parents equally capable of caring for the child on the theory the best interest and welfare of the child are served by permitting custody to remain in the status quo under such circumstances. Our conclusion in this regard finds corroboration and support in the concurring opinion of Judge Tate rendered in the Peniston case and which indicates beyond any doubt the majority opinion was predicated upon the finding that the mother had forfeited her right of custody by virtue of her abandonment of *131 the child for a period of more than seven years.
Additionally, with more than passing interest, we note language in the Peniston case reiterating and reaffirming the rule that in custody cases reasonable latitude must be left to a trial judge in matters affecting the welfare of children and that his findings of fact are entitled to great weight.
In the case at bar it is suggested that plaintiff has abandoned her child. In this regard the record indicates plaintiff was married at the age of IS to a husband only a few months older than plaintiff. Of the union of this young couple two children were born. The second child, Donna Jo Hebert, bom March 29, 1956, is the subject of this litigation. At the time of Donna Jo’s birth, plaintiff was residing with her parents, having previously separated from her husband because of his immaturity and persistent refusal to discharge his marital obligations. It further appears that plaintiff, a young woman barely old enough for the responsibilities of marriage, was not only without means of support but also virtually unwanted and unwelcome in her father’s home in which she lived. Having previously resided out of the state with her husband in an attempt to preserve the marriage, she was ineligible for welfare assistance and although she had consulted the local District Attorney in an attempt to obtain support from her spouse, she was without income of any sort. Eventually she placed her two children with families who agreed to accept them. Donna Jo, being three months old at the time, was taken by defendants.
To earn a livelihood, plaintiff obtained employment as a waitress and cashier in numerous establishments such as restaurants and bars, some of which jobs lasted only a few days or a few weeks. In a further attempt to effect a reconciliation with her husband, she made another journey to Texas. Her efforts, however, in this regard, were unsuccessful because her husband refused to accept the children or discharge his parental obligation toward them. In 1957 (while living with her husband with the view of eventually persuading him to accept the children) she signed a voluntary surrender of Donna Jo to defendants.
Subsequently, in 1958, when plaintiff was finally convinced her spouse would never accept or support the children, plaintiff left her husband, established a home with her grandparents, obtained employment, resumed custody and control of her son and oldest child and attempted to regain possession of Donna Jo from defendants. Upon defendants’ refusal to surrender the child, plaintiff instituted a habeas corpus proceeding against defendants, said matter having been filed when the child was two years of age. The matter was tried but never submitted. For a period of three years following trial of the habeas corpus proceeding, plaintiff was led to believe the case was under advisement and on several occasions contacted her attorney to ascertain the status thereof. It is unnecessary to a decision in this matter to state the reason for the delay, suffice 'to say it was not caused by any fault of plaintiff nor do the circumstances .indicate she could be considered to have lost interest therein, the record establishing the contrary.
When the true status of plaintiff’s initial habeas corpus proceeding was fully revealed to and understood by her, the first action was dismissed and the present suit filed by new counsel. In his reasons for judgment, our brother below absolved plaintiff of any suggestion of indifference or lack of interest and we find his conclusion in this respect amply supported by the record. The distinction between the case at bar and those wherein parents have been held to have forfeited their right to custody by failing for several' years to seek the return of their children when they were physically and financially capable of caring for them appears clear and certain. In the case at bar, plaintiff, a young mother unable to support her children, whose parents denied her any assistance and whose husband de- *132 dined his parental responsibilities, was in no position to support or care for her children herself. Ultimately recognizing the impossibility of a workable reconciliation with her husband, she established a home with her grandparents, obtained permanent employment and sought to gather her scattered family about her and provide a home in which her children could be reared together and enjoy each other’s companionship, love and association. Plaintiff is presently approximately 21 years of age and the record establishes that for a period of at least two years prior to this habeas corpus proceeding her conduct (which admittedly was previously somewhat questionable) has been most proper and decorous. She has been steadily employed in a super market for a period of approximately two years and presently earns $44 weekly. Her immediate superior who testified herein stated unequivocally she had proven to be an honest, industrious and dependable employee. We are convinced the record shows that when plaintiff felt she was in a position to provide a suitable home for her children she immediately sought to regain them. Similarly we are convinced there is no testimony in the record herein indicative of plaintiff’s intention to abandon Donna Jo. Defendants’ contention that plaintiff abandoned the child does not, in our opinion, find support or confirmation in the record of this case.
Unquestionably the record does indicate that defendants are capable of providing the child greater financial and material advantages but such factor alone, however, is not controlling. Superior ability to furnish the physical comforts of life is not the sole criterion of the best interest and welfare of a child whose custody is at issue. A mother who is morally fit to rear her child in a decent, wholesome environment, who is capable of making reasonable provision for the child’s physical welfare and who has not forfeited her natural, inherent right to custody by clearly abandoning or rejecting the child, may not be denied return or restoration of custody merely because a party or parties to whom the child was temporarily entrusted may be capable of providing the child greater monetary and material benefits.
We are not unmindful of the heartbreak normally occasioned the party compelled to surrender possession and custody of a- child under circumstances similar to those involved in the instant case. However, any person assuming the role of foster parent is presumed to be aware of the possibility of being separated from the child after having developed an understandable love, affection and attachment for the object of his beneficence. To deny or deprive a mother of custody of her child is a matter of such seriousness and gravity it must not be undertaken by a court except in cases where the parent has clearly forfeited the right of custody and the welfare of the child clearly so requires.
Our brother below who heard all the witnesses in the trial of both habeas corpus proceedings was familiar with the circumstances attending this litigation. He did not consider that the best interest of the child would be served by denying plaintiff custody of her daughter. It is settled law that the appellate courts of this state are reluctant to disturb the judgment of a trial court in custody matters and will not do so except in those cases wherein it appears the trial judge has abused the discretion vested in him. Kieffer v. Heriard, 221 La. 151, 58 So.2d 836; Guillory v. Guillory, 221 La. 374, 59 So.2d 424; Fitzgerald v. Fitzgerald, 232 La. 916, 95 So.2d 497.
For the reasons hereinabove set forth, the writs of certiorari, prohibition and mandamus are hereby recalled, annulled and set aside and the judgment of the trial court affirmed.
Affirmed.