PROVO STY, J.
The plaintiff has brought' habeas corpus to recover possession of his two little girls, aged 10 and 8, respectively. Defendants are the father and the sister of the deceased wife of plaintiff, mother of the children. The defense is that during her *279 last illness the mother of the children confided them to the defendants, with the request that the defendants retain possession and control of them after her death; that the defendants are very much attached to them and they to defendants, and that it would be cruel to separate them and defendants ; that the welfare of the children would require that they be left with the defendants, the plaintiff being unworthy to have charge of them, he having lived in concubinage with another woman during the life of his wife, and still continuing to do so.
The plaintiff was married to his late wife in June, 1896. The couple lived happily together for some years. Then came discord. Whether brought on by the violent and ungovernable temper of the wife, or by the infidelity of the husband to his marriage vows, does not appear with certainty from the record. When plaintiff sought to prove his alleged grounds of complaint against his late wife, the evidence was objected to as irrelevant, and was ruled out. The alleged misconduct of plaintiff was fully gone into, and the fact of his having lived in more or less open concubinage with a certain woman was established. This concubinage had' already begun in October, 1907. How long it continued cannot be ascertained with certainty from the record. One witness says that the plaintiff and his concubine moved into the house next door to her in September, 1909, and elsewhere says that when she leased her house in December, 1908, the plaintiff and his concubine were already occupying the house next door, and that they moved, away from there in September. Another witness testifies that plaintiff admitted to him in February, 1909, that he was living with the concubine in question; that “after-wards” (date not fixed) plaintiff said he was willing to quit the woman, and had sent her to her father in Chicago. This same witness soys that about that time plaintiff disappeared from his usual haunts and was supposed to have gone to live in Chicago. Whether the woman did go to Chicago, and whether plaintiff has, or not, continued his relations with her, the record does not show.
In January, 1910, plaintiff filed a suit in. separation from bed and hoard against his wife on the grounds of excesses, cruel treatment, uncontrollable temper, etc. In his petition he alleged that, owing to the violence of his wife, he had had to abandon the matrimonial domicile on January 2, 1909, and live elsewhere.
After thus separating from his wife and children, plaintiff made no effort to see them. He provided constantly for them, however. 1-Ie testifies, and is not contradicted, but, on the contrary, is corroborated, that he left in the possession of his wife furniture which had cost between $1,200 and $1,500, and also diamonds worth $1,500 to $2,000, together with $500 of premium bonds, and that up to November, 1909 he had sent her regularly $160 a month, and that thereafter he having-met with some reverses in business, he had sent her $50 a month.
Plaintiff’s wife continued to live in the house thus left to her until January 13, 1910, when she sold the furniture and went to live at the house of her father. The reason of her doing this was that she suffered from rheumatism and needed to be taken care of. She died on May 30, 1910.
On the day that plaintiff’s mother saw the announcement of plaintiff’s wife’s death in the paper, she telegraphed plaintiff, in Chicago, where plaintiff had then been living off and on for the past nine months, and plaintiff on the same day took the train to New Orleans to join his children.
1-Ie says that he proposes to keep them at his mother’s house, in the care of his mother. Plaintiff’s mother is 58 years old, and has already the care of one little grandchild. She testifies that she is willing and anxious *281 to have the charge and care of the two children, and be a mother to them.
She has ample means for providing for their education and maintenance.
In what line of business plaintiff has been engaged in the past, or is now engaged, the record does not show; but there is no reason for supposing that he is not amply able to defray the expenses of the education and maintenance of his children. Plaintiff’s only home is with his mother in New Orleans.
[1] Plaintiff, as father of the children, is, of course, entitled to their possession; and they must be given to him, unless the court is satisfied that he will neglect them, or expose them to improper influences, in which case the paramount interest which society has in seeing to it that they be well taken care of and properly brought up would justify the court in making some other disposition of them.
Plaintiff’s blameworthy conduct with this other woman does not necessarily evince absence of fatherly affection and solicitude for his children. His separation from his wife may not have been without justification. Defendants were unwilling to have that phase of the case gone into. His leaving the little children with their mother is no sign of a lack of sentiment on his part. It may be quite the contrary. His not trying to see them may have been from his unwillingness to meet his wife, or to cause her annoyance; and that such was probably the case finds confirmation in his conduct on receiving his mother’s telegram announcing that, by his wife’s death, the obstacle which had stood between him and his two little girls had been removed. Without a moment’s delay he set out across 1,000 miles to take charge of them, though he knew that they were in good hands and would not suffer from any delay on his part. Apparently, from this, they were of paramount interest to him, since he at once put aside everything in order to go to them. The regularity with which he sent money to his wife (without waiting to be asked, so far as the record shows) gives earnest of his future willingness and ability to provide for the material comfort of the children.
And certainly no widower could offer to the court a more reliable guaranty to the future moral welfare of his two little girls than to pledge himself under oath that he will leave them in the keeping of his good mother, and to have this mother come before the court and give under oath the assurance that she is willing and anxious to have charge of, and to be a mother to, the little ones, as plaintiff has done; this mother being in age and fortune well able to fulfill the trust.
[2] It is not shown that plaintiff continues his former irregular conduct; and, if he did, the fact of his maintaining some illicit relations with this woman, she living in Chicago and he in New Orleans, would not be good grounds for depriving him of the care and custody of his children, when there can be no doubt that he is to keep the children at his home in New Orleans in the care of his mother, who is anxious to have them, and is possessed of ample means to care for them and educate them, and promises to be a mother to them.
“For depriving a father of the tutorship of his children, a strong case should be made out.” In re Alexander, 127 La. 853, 54 South. 125; Ozanne v. Delile, 5 Mart. (N. S.) 21; Segura v. Prados, 2 La. Ann. 751.
In the Ryan Case, 126 La. 449, 52 South. 573, which defendants invoke' as a precedent, the child was a girl “just reaching the age of womanhood,” whom a father for whom she had “no affection,” who ,had neglected and failed to provide for her and her mother, was seeking to separate from the persons who had •had charge of her almost from babyhood, and to whom she was tenderly attached. The court was of opinion that in such a ease *283 thé “welfare and happiness” of the child had to be considered. In the case at bar, nothing shows that plaintiff will not prove a devoted father to the children, and his mother a tender mother to them.
We have the less hesitation in confirming the' judgment from the fact that Miss Cora Frank, the principal defendant, to whom the mother of the children confided them when dying, has died since the appeal, and that now the only respondent is the grandfather of the children.
Judgment affirmed.
BREAUX, O. J., and MONROE, J., dissent.