46 So.2d 760 (1950)
217 La. 532
STATE ex rel. MARTIN
v.
GARZA et al.
No. 39054.
Supreme Court of Louisiana.
March 20, 1950.
Rehearing Denied April 24, 1950.
Julian E. Bailes, Natchitoches, J. Vance Thompson, Alexandria, for relatrix-appellant.
John G. Gibbs, J. E. Pierson, Natchitoches, for respondent-appellee.
FOURNET, Chief Justice.
The relatrix, Mrs. Elva V. Welborn Martin, is appealing from a judgment recalling a writ of habeas corpus previously issued, directed to the respondents Sam Aaron Garza and Stella Garza, commanding them to produce the relatrix' minor child, Hershel Schmeleberger, and rejecting her demand to have the custody of the child restored to her.
The relatrix instituted these proceedings to recover her 20-month-old son, born of her marriage to John Schmeleberger, alleging that the subject child was being unlawfully detained by the respondents in that he was being held without her consent; that at the time she left the child with the respondents on April 7, 1947, she did so because of illness and financial inability to care for him, with the understanding that the respondents would care for the child until such time as she recovered; that her signature to a purported consent to the adoption of the child was obtained by the respondents without relatrix being informed of the import thereof, and under the representation of the respondents that the purpose of her signature to the instrument was to keep anyone else from getting the child; that soon thereafter she regained her health and obtained employment, but upon calling for the child the respondents refused to surrender him unless *761 $700 was paid to them; that this amount was later reduced to $500; and that though she made several demands for her child they still persisted in keeping it, although she is willing to pay all reasonable expenses incurred by the respondents for his upkeep. She further alleged that she is now married to and living with her second husband, Aubrey Martin, has a good home and is able to take care of the child, and that respondents are not fit persons to care for him.
The respondents first filed a motion for bond for costs and a plea of vagueness, and on the return day filed an answer, admitting that they had possession of the child and that the matter of surrendering the child upon payment of a stipulated sum of money had been discussed, but denied that the child was surrendered to them due to any misrepresentation, averring that on the contrary it was due to the serious illness of the child and of the mother, for which her own conduct was responsible, and that it was to the best interest of the child that he should remain with them.
Before undertaking the trial of the habeas corpus proceeding, the trial judge recessed as the Tenth Judicial District Court and reconvened as the Tenth Juvenile Court, in order to dispose of the proceeding there instituted on the 22d day of September, 1947, by the Garzas, respondents herein, for the adoption of the child, the relatrix here having appeared therein for the purpose of withdrawing her consent to the adoption and seeking to have revoked the interlocutory decree granting temporary custody of the child to the Garzas. After a hearing was had on the motion to revoke the interlocutory decree which not only showed relatrix' withdrawal of her consent to the adoption of her child by the respondents but affirmatively showed that the child's father was not dead, as alleged in their petition, but that he was living in New York and had visited in Natchitoches since the filing of the adoption proceedings and that his consent to such adoption was lackingthe court recessed as the Tenth Juvenile Court, reconvened as the Tenth Judicial District Court, and proceeded to trial on the merits of the habeas corpus proceeding. After the relatrix was called to the stand to testify on her own behalf, the respondents objected to the introduction of any evidence on the ground that the district court was without jurisdiction in the matter since the juvenile court had already assumed jurisdiction of the subject child. The objection was overruled and after a trial on the merits, the court being of the opinion that the sole issue was the welfare of the child, concluded that since the respondents had nursed the child back to health from the time they had assumed the responsibility for his care and custody, he thought it to the child's best interest and welfare that he should remain with them, and accordingly rendered judgment rejecting the demands of relatrix, from which judgment she prosecutes this appeal.
The respondents have filed an answer here to the appeal, urging that their plea to the jurisdiction of the district court should have been sustained by the trial judge. The record reveals that no such plea was ever formally filed, but instead, as above stated, the plea was offered by way of objection to the evidence, and was overruled by the trial judgeand we think correctly so.
While the Tenth Juvenile Court was vested with jurisdiction in the proceedings for the adoption of the subject child, La. Constitution, Art. 7, Sec. 52, those proceedings were properly disposed of by the trial judge upon the showing made. Green v. Paul, 212 La. 337, 31 So.2d 819, and authorities therein cited; Owles v. Jackson, 199 La. 940, 7 So.2d 192; Revised Statutes, Sec. 2328, Dart's La.Gen.Stats. Sec. 4839.8. The Tenth Judicial District Court was the proper forum to determine the issues raised on the writ of habeas corpus, that is, whether the child was being illegally detained by the respondents. La. Constitution, Art. 7, Sec. 2; State ex rel. Simpson v. Salter, 211 La. 918, 31 So.2d 163; State ex rel. Fazzio v. Triolo, 156 La. 824, 101 So. 211; State ex rel. Billington v. Sacred Heart Orphan Asylum, 154 La. 883, 98 So. 406.
In such cases the sole question for the court's consideration is whether the *762 parent by his or her conduct has forfeited his or her parental right to the child, for it is the well settled jurisprudence of this state that the courts are not authorized to interfere with a parent's authority over his or her children, except if the court is satisfied that he, or she, will neglect them, or expose them to improper influences, in which case the paramount interest which society has in seeing to it that they be well taken care of and properly brought up would justify the court in making some other disposition of them, Ex parte Lincoln, 128 La. 278, 54 So. 818; State ex rel. Martin et al. v. Talbot et ux, 161 La. 192, 108 So. 411; State ex rel. Bethany v. Corley et ux, 172 La. 266, 134 So. 87, and the burden is on those resisting the parent's right to show his or her disqualification or unfitness to have the custody of the child. State ex rel. Burleigh v. Savoie, 185 La. 985, 171 So. 98; State ex rel. Perdue v. Carkuff, 182 La. 920, 162 So. 729; Heitkamp v. Ragan, 142 La. 81, 76 So. 247. In the case of Heitkamp v. Ragan, supra, this Court quoted with approval the holding in Hibbette v. Baines, 78 Miss. 695, 29 So. 80, 51 L.R.A. 839, as follows: "And while we are bound also to regard the permanent interests and welfare of the child, it is to be presumed that its interests and welfare will be best promoted by continuing that guardianship which the law has provided until it is made plainly to appear that the father [or mother] is no longer worthy of the trust. The breaking of the ties which bind the father [or mother] and the child can never be justified without the most solid and substantial reasons." (Brackets ours.) 142 La. at page 84, 76 So. at page 248.
We think, therefore, that the trial judge erroneously based his decision in the matter (apparently reluctantly) on his appreciation of the best interest of the child, without giving consideration to the paramount right of the mother to her child, nor did he give consideration to the attempt made by the respondents to establish the relator's unfitness to have the custody of her child.
We have carefully studied and analysed the evidence in this case, and without detailing the same, suffice it to say that the respondents have totally failed to carry the burden that was theirs to prove that relatrix by her conduct has forfeited her right to her child, or that she is otherwise disqualified to have custody of the child. We are convinced from the evidence that the relatrix never intended to abandon her child or to permanently part with his custody when she surrendered him to the respondents. On the contrary, the overwhelming preponderance of the evidence shows that she did so because at the time she was ill and financially unable to care for the child, who was also ill and required medical attention in addition to ordinary care. As soon as relatrix recovered her health she immediately secured employment, and within three or four months after the child had been left with the respondents she called for him. In spite of the fact that her earnings were very meager at the time she employed an attorney and paid him a fee of $35 (although the record does not show what action was taken by this attorney); she also sought assistance of the attorney who was the notary before whom her purported consent to the adoption had been executed, and he testified to having accompanied the relatrix at her request to the home of the respondents, where the matter of the payment of a reasonable consideration to the respondents for the care of the child was discussed and was recommended by the attorneywhich, however, relatrix was unable to pay. Her earnestness and desire to secure the custody of her child is revealed not only by the repeated efforts and demands made by the relatrix, but the record further discloses that her anxiety to recover the custody of the child, with the attendant worry connected therewith, caused her to nearly collapse with a nervous breakdown, forcing her to discontinue the work she was pursuing. After recovering from this condition she was married to Aubrey Martin, who assisted her with the necessary finances for instituting these proceedings and appeared in the trial of the case to support the allegations of the petition that not only did he consent to relatrix bringing the child into their home but also *763 that he was able and willing to care for him.
The suggestion by the respondents that they have given the child care and attention, have treated him as their own, learned to love him, and that the child has learned to know and love them as his parents, beside the fact that they own their own home and are better able to care for the child than the relatrix, does not authorize the court to deprive the mother of her parental right and authority over the care and custody of her child. State ex rel. Perdue v. Carkuff, supra; Heitkamp v. Ragan, supra. In the latter case this Court aptly observed: "A judge has some discretion over the care and custody of children; but it has to be exercised on solid and substantial grounds. Nor can the fact that other people are attached to the child, or that the child is attached to other people, or that the ability of other people can better provide for the care, etc., of the child deprive the father [or mother] of his [or her] parental right and authority to have the care and custody of his [or her] own child. * * * `The discretion to be exercised is not an arbitrary one, but in the absence of any positive disqualification of the father [or mother] for the proper discharge of his [or her] parental duties, he [or she] has, as it seems to us, a paramount right to the custody of his [or her] infant child, which no court is at liberty to disregard. * * *'" (Brackets ours.) 142 La. at page 83, 76 So. at page 247. See, also, Ozanne v. Delile, 5 Mart.,N.S., 21.
For the reasons assigned, the judgment of the lower court is annulled and set aside; and it is now ordered, adjudged and decreed that the respondents, Sam Aaron Garza and Stella Garza are hereby ordered and directed to surrender the custody of the minor child, Hershel Schmeleberger, to his mother, Mrs. Elva V. Welborn Martin; all costs to be paid by respondents.
HAMITER, J., concurs in the decree.
HAWTHORNE, J., concurs and assigns written reasons.
MOISE, J., takes no part.
HAWTHORNE, Justice (concurring).
I am in full accord with the decree in this case awarding custody of the minor child, Hershel Schmeleberger, to his mother and with the reasons given therefor.
I concur in the opinion insofar as it holds that the district court was the proper forum to determine the issues raised in the habeas corpus proceeding for the reason that the judge of the district court, before undertaking the trial of the habeas corpus matter, opened the juvenile court for the purpose of passing upon a motion filed in an adoption proceeding pending in that court at the time the habeas corpus suit was filed. This motion had been filed in the juvenile court in behalf of relatrix to revoke the interlocutory decree of adoption and dismiss the adoption proceeding in which the temporary custody of the child had been granted to the respondents herein.
On the trial of the motion it was shown that the relatrix had withdrawn her consent to the adoption, and that the child's father was not dead, as alleged, and had not consented to the adoption. On this showing it was entirely proper for the judge of the juvenile court to dismiss the adoption proceeding pending in the juvenile court, and this is, in effect, exactly what he did; otherwise the district court was without jurisdiction. This court should notice ex proprio motu the lack of jurisdiction under the well settled rule of law that, when two courts have concurrent jurisdiction over the same subject matter, the court which first obtains jurisdiction and possession of the res retains it to the end of the controversy to the exclusion of all others. See State ex rel. Terry v. Nugent et ux., 212 La. 382, 31 So.2d 834.
That the district judge was familiar with this rule of law and the holding of this court in the Nugent case, supra, is established beyond any doubt by the fact that, prior to proceeding with the trial of the habeas corpus suit, he opened the juvenile *764 court for the purpose of disposing of the motion to dismiss the adoption proceeding pending therein. There was no reason otherwise for him to convene the juvenile court and try the motion. In his written reasons for judgment the district judge states that the respondents in the habeas corpus proceeding pleaded that the district court was without jurisdiction, since the juvenile court had first obtained jurisdiction in the adoption proceeding. I am unable to find a plea to the jurisdiction of the district court in the record. If any such plea was made, I think the judge was correct in overruling it, for, as I interpret the record as made up, he had previously sustained relatrix' motion in the juvenile court to revoke the interlocutory order of adoption and dismiss the adoption proceeding.
Furthermore, I am unable to reconcile the opinion of this court in the Nugent case with the opinion in the case of State ex rel. Simpson et al. v. Salter et al., 211 La. 918, 31 So.2d 163, 165. In each of these cases a proceeding for adoption of a child was pending in the juvenile court at the time the habeas corpus proceeding was filed in the district court. In the Simpson case, which was decided first, this court awarded custody of the minor to the relatrix in the habeas corpus proceeding in the district court, stating: "The plea of lis pendens is not well founded for the reason that the cause of actions [causes of action] are entirely different and are not such that present concurrent jurisdiction. In the first place the Juvenile Court has exclusive jurisdiction in adoption proceedings of children under seventeen years of age and in the second place the civil district court has exclusive jurisdiction over a contest between a parent and a third person for the custody of a minor." (All italics mine.)
In the Nugent case, however, this court dismissed the habeas corpus proceeding in the district court, saying in the course of that opinion:
"The issue in contest is the right to custody of the child, Allen Reed. If, as an incident to his adoption, the Juvenile Court acquire[d] jurisdiction to determine the question of custody, the Civil District Court was without jurisdiction under the well-settled rule that, when two courts have concurrent jurisdiction over the same subject matter, the court which first obtains jurisdiction and possession of the res retains it to the end of the controvery to the exclusion of all others. See Geilinger v. Philippi, 133 U.S. 246, 247, 10 S.Ct. 266, 33 L.Ed. 614; Lake Bisteneau Lumber Co. v. Mimms, 49 La.Ann. 1283, 22 So. 730 and cases there cited. Hence, since the adoption proceeding was filed in the Juvenile Court prior to the filing of the instant suit, the only inquiry in the case is whether adoption proceedings filed under Act No. 154 of 1942 vest the Juvenile Courts with jurisdiction over the children sought to be adopted.
"We experience no difficulty in answering the query in the affirmative. * * *" [212 La. 382, 31 So.2d 835.]
In the Simpson case, therefore, the basis of the decision was that the courts did not have concurrent jurisdiction, and the basis of the decision in the Nugent case was that they did.
I do not agree with the holding in the Simpson case, and for that reason dissented from the refusal to grant a rehearing. I concurred in the decree in the Nugent case for the reason that in the course of the opinion in that case this court concluded that the holding therein was not in conflict with that of the Simpson case. I do not agree with that conclusion. In distinguishing the two cases the court stated in the Nugent case: "The difference between the Simpson case and the instant one is apparent. There, although the jurisdiction of the Juvenile Court attached, it was subsequently divested by the refusal of the mother to give her consent to the adoption proceedings, or rather, the withdrawal by her of the consent previously given. * * *"
An examination of the opinion in the Simpson case will disclose that the parents of the child filed in the juvenile court an opposition to the adoption proceeding which was not ruled upon by that court, and this opposition was pending in that court at the time the habeas corpus proceeding was filed and tried in the district court. I do not *765 understand how the mere filing of this opposition, whatever the basis for it, whether the withdrawal of consent for adoption or otherwise, could ipso facto divest the juvenile court of jurisdiction and vest jurisdiction in the district court of the habeas corpus proceeding filed therein. The Simpson and Nugent cases, therefore, in my opinion cannot be distinguished.
For these reasons I respectfully concur.