94 So.2d 888

STATE of Louisiana ex rel. Mr. and Mrs. Earl J. LOMBARDO,

v.

Mr. and Mrs. George MILLER, Jr.

No. 42961.

April 1, 1957.

Herbert J. Garon, New Orleans, for plaintiff-appellant.

Clem H. Sehrt, Edward J. Boyle, Dudley A. Philips, Jr., New Orleans, for defendant-appellee.

FOURNET, Chief Justice.

Mr. and Mrs. Earl J. Lombardo, who were married July 9, 1947; alleging that Katherine Elizabeth, the child born of that marriage on May 4, 1948, had been placed temporarily with respondents, Mr. and Mrs. George Miller, Jr., following the separation and divorce of relators in 1950 [1] but who have, since their remarriage on February 15, 1956, refused to surrender her,

---

1. Although the divorce was instituted by relator on the ground of two-year separation, the legal custody of the child was awarded relatrix in the decree.

obtained, on February 21, 1956, a writ of habeas corpus commanding them to produce the child and show cause why she should not be released and returned to her parents. The child was, accordingly, produced in court and, in answer, respondents generally denied the allegations of the petition, averring affirmatively, without factual basis therefor being specified, that relators were "not fit and proper persons and should be deprived of the custody" of the minor, which should be granted respondents. Following trial judgment was rendered recalling the writ and granting the *permanent* care, custody, and control of Katherine Elizabeth to respondents. From this judgment the relators have appealed.

Under all natural and Biblical law, as well as the statutes of this state,[2] the custody, control, and guardianship of a child belongs to the mother and father and courts are reluctant to interfere with this parental right and authority except when satisfied the parents "will neglect them, or expose them to improper influences, in which case the paramount interest which society has in seeing to it that they be well taken care of and properly brought up would justify the court in making some other disposition of them. Ex parte Lincoln, 128 La. 278, 54 So. 818; State ex rel. Martin v. Talbot, 161 La. 192, 108 So. 411;

State ex rel. Bethany v. Corley, 172 La. 266, 134 So. 87, *and the burden is on those resisting the parent's right to show his or her disqualification or unfitness to have the custody of the child.* State ex rel. Burleigh v. Savoie, 185 La. 985, 171 So. 98; State ex rel. Perdue v. Carkuff, 182 La. 921, 162 So. 729; Heitkamp v. Ragan, 142 La. 81, 76 So. 247. In the case of Heitkamp v. Ragan, supra, this court quoted with approval the holding in Hibbette v. Baines, 78 Miss. 695, 29 So. 80, 51 L.R.A. 839, as follows: 'And while we are bound also to regard the permanent interests and welfare of the child, it is to be presumed that its interests and welfare will be best prompted by continuing that guardianship which the law has provided until it is made plainly to appear that the father (or mother) is no longer worthy of the trust. The breaking of the ties which bind the father (or mother) and the child can never be justified without the most solid and substantial reasons.' (Brackets ours.) 142 La. at page 84, 76 So. at page 248." State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760, 762. (The emphasis has been supplied.)

We find the pertinent facts of the case as disclosed by the record to be that relators separated some four months after marriage and while relatrix was with child. She thereupon returned to her mother's home,

2. Articles 35, 146, 157, 215–220, 227, and 250 of the Revised Civil Code. The jurisprudence thereunder is in accord.

where she continued to reside until shortly prior to the remarriage in 1956. There she cared for her child with the aid of her mother from its birth in 1948 until her mother became ill and needed operative treatment in the fall of 1952. From this time the child has remained with respondents (the sister and brother-in-law of relatrix), who frequently kept the child during earlier years and who had become attached to her, the mother of relatrix, following her recovery, being unwilling to cooperate further with the care of the child during the hours relatrix worked. Whenever relatrix sought the return of the child she was met with threats that the asistance of the father would be secured and the child taken from her by him. However, relatrix continued to contribute to the child's support commensurate with her means and as the respondents would permit. She also visited with her daughter frequently until more recent years when her right of visitation and to have the child with her on occasions was so curtailed by respondents it was most difficult to see her daughter. When respondents refused to turn the child over to the mother and father without liti-

gation following their remarriage, this suit followed.

██ It would serve no useful purpose to analyze the sordid testimony given by some members of the family of the relatrix.[3] Suffice it to say that respondents have failed to carry their burden of proving relators, by their conduct, forfeited their right to the custody and control of their daughter, and the trial judge erred in concluding they had. We are also convinced, despite protestations of respondents to the contrary, that the child was never abandoned by relatrix and was only placed with respondents on a temporary basis, which continued because of the unwillingness of the mother of relatrix to assist in its care. In fact, we are impressed with the frankness and honesty of the testimony given by relatrix throughout. That the child was never neglected and was at all times given the best possible care by respondents is not denied by relatrix. Actually, respondents took such good care of the child and became so attached to her they desire to keep her to the exclusion of her own mother and father.

3. The only charge of unfitness that is apparently levelled at the father is one of indifference, and while there are charges and counter-charges by members of the family of relatrix (but not by respondents and relatrix) with respect to the morals of Mrs. Lombardo and Mrs. Miller, it are true the moral code of both is not would appear that even if these charges

too different. However, nowhere in the record is it made to appear the child was at any time exposed to any of the alleged acts of immorality or that the mother ever did anything to corrupt or tend to corrupt the morals of the child. Under these circumstances, the ruling in In re Knight, 212 La. 357, 31 So.2d 825, is controlling here.

■ Since this appeal was lodged here, however, we are advised by counsel for respondents, which is confirmed by counsel of record representing relators, that relators have again separated and relatrix has instituted separation proceedings based on cruelty. It also appears relatrix is again with child and without funds. We are further advised by counsel for relators since the case was submitted under orders of the court [4] that when he spoke to them in January of 1957 the father expressed the belief he would be unsuccessful in the appeal under present circumstances and desired to abandon it, and the mother stated she did not feel she could prosecute the appeal alone although she loved and wanted her child. Counsel further advises he did not then press matters (although he prepared a motion of abandonment of appeal which was sent to relators for signature and never returned) since the parties seemed to have lost confidence in him (apparently because of his failure to win the case below) and had actually sought advice from other counsel in whom greater confidence was reposed, but whom relatrix states she is unable to employ to represent her.

■ Under these circumstances, and particularly in view of the fact that judgments awarding custody of minor children are subject to change and modification at any time, State ex rel. Castille v. Cooke, 183 La. 404, 164 So. 153; State ex rel. Burleigh v. Savoie, 185 La. 985, 171 So. 98; State ex rel. Girtman v. Ricketson, 221 La. 691, 60 So.2d 88, we are reluctant to take the child from respondents at this particular time and will continue the care and custody of the subject child with them on a temporary basis, with, however, reservation of visitation rights and privileges to the parents, including having the child visit with relatrix. The judgment of the lower court will, accordingly, be recast to reflect this conclusion, and, as thus recast, will be affirmed.

For the reasons assigned, the judgment of the lower court is recast to read as follows:

It is ordered, adjudged, and decreed that the writ of habeas corpus heretofore granted herein be vacated and annulled, and that the said relators', Mr. and Mrs. Earl J. Lombardo's, demands be rejected at their costs; and

It is further ordered, adjudged, and decreed that the temporary care, custody and control of the minor child, Katherine Elizabeth Lombardo, be granted to the respondents, Mr. and Mrs. George Miller, Jr., with full and proper visitation privileges reserved to the relators, Mr. and Mrs. Earl J. Lombardo.

4. Neither counsel filed brief here or argued the case in open court.