TATE, Judge.
The plaintiffs are the natural parents of a baby girl which was four months of age at the time of the hearing below. By these proceedings they seek to obtain custody of this child from the defendants, to whom the child had been surrendered for adoption immediately after birth. Within two and one-half months, the natural parents formally changed their mind and desired the return of their child. (As a result, no interlocutory or final decree had been entered on the adoption petition filed by the foster parents, who are the defendants herein.)
The plaintiff natural parents appeal from the dismissal of the custody proceedings brought by them.
As is demonstrated by the jurisprudence cited below, the general rule in-Louisiana is that the natural parents have the superior right to the custody of their child over third persons, although such-right must yield to the superior right of the State to deprive the natural parents of the care and possession of their child in the event the physical, mental and moral welfare of the child requires it; but, further, as against foster parents with whom the child has been voluntarily placed by them, the natural parents — although they may be of good character and able to afford a decent home to their child — may nevertheless in certain instances forfeit their ordinarily paramount right to the custody of their natural child, and in such instances the best walfare of the child is deemed served by leaving the child with the foster parents who have been raising the child as their own.
What we have before us for decision is the latter type of situation and the question of whether, under the circumstances shown by the present record, the trial court committed error in finding that the natural parents had forfeited their right to obtain the return of their child from the foster parents, so that the welfare of the child is better served by letting it remain within the permanent care and custody of the foster parents.
The facts are fully and fairly set forth in the reasons for judgment rendered by our learned trial brother, as follows:
“The relators, Roy Lamar Rothrock and his wife, Ruth Rothrock, age 30 and 28 years *765 of age respectively, residents of Orange, Texas, brings this habeas corpus proceeding to obtain the custody of their infant daughter now in the custody of Clyde Ray Web-ber, Jr., and his wife, Gwendolyn Huff Web-ber, residents of Ferriday, Concordia Parish, Louisiana, the respondents here who had sought to adopt the infant daughter of the relators.
“The record shows that the infant daughter was born about 7:30 P.M. on June 9th, 1962, in the Parkplace Hospital, Port Arthur, Texas, and some two hours later or 9:30 or 10:00 the relators signed a document wherein they surrendered the said infant for the purpose of adoption. The document was signed by both Mr. and Mrs. Rothrock in the presence of two witnesses and before a Notary Public, Mr. Guy H. Carrilcer, an Attorney at Law, Port Arthur, Texas, who had prepared the document, after having had a telephone communication with a Louisiana attorney as to form.
“The relators after having signed the document in presence of two witnesses and before the Notary, left the hospital the next morning at about 8 o’clock, neither of relators having ever seen their infant child.
“The record further shows that the re-lators have six other children; that during the pregnancy of Mrs. Rothrock she consulted several doctors in the Orange-Beaumont area, apparently for the purpose of obtaining their services as obstetrician. In early June she appeared at the office of Dr. O. J. Richardson, Neth-erland, Texas, and this call appears to have been made on June 4th, 1962, and on June 9th, the child was born in the said hospital and Dr. Richardson being absent, an associate, Dr. Clyde Stewart, attended her when the child was born.
“The record further shows that as early as April, 1962, she stated she wanted the child to be placed for adoption and so stated on her visit to Dr. Young, as well as the time she was in the office of Dr. O. J. Richardson. Shortly after the birth of the said child relators caused the lawyer to come to the hospital where re-lators executed the document of surrender in the presence of the two witnesses and the Notary Public, after first having the instrument read to them and indicated to the lawyer that they understood its contents and that they were surrendering the child for adoption. On the following morning about 8 o’clock Mrs. Roth-rock accompanied by her husband, Mr. Rothrock, left the hospital and returned to their home without ever having seen their newborn daughter.
“The relators made no effort to see the child at any time and Mr. and Mrs. Web-ber removed the child from the hospital on June 11th, 1962, and took it to their home in Ferriday, Louisiana, where it is at this time.
“The Webbers are substantial people and both being teachers in the public schools at Ferriday, Louisiana; Mr. Webber also has other business interests all of which affords him a good income.
“The record shows that the relators were in somewhat of a financial difficulty for a time prior to the birth of this child, he being out of employment in his pest control work and Mrs. Rothrock had to work as a waitress in order for them to have some income, however, since the birth of the child, Mr. Rothrock has found employment in the pest control field, and now is earning about $100.-00 per week. They stated their desire to place the baby out for adoption was due to their financial condition, but now their economic condition has bettered and they wish to have her back to raise with their other children.
“The relators testified that they had sought to locate the whereabouts of their infant daughter shortly after hav'jig left the hospital and tried to contact the lawyer who executed the act of surrender and also sought to contact Dr. Richardson, but that *766 they were unable to find out where and who their baby was with.
“Sometime later they received a letter from Mr. Nathan M. Calhoun, attorney, Vidalia, Louisiana, who had been appointed curator in the adoption proceedings the Webbers had filed in the Juvenile Court seeking to adopt the baby; they also had ■discussed the matter with a visitor from the Department of Public Welfare who was making a routine investigation as required in adoption proceedings, and upon learning where and who had the baby, the relators immediately notified the attorney that they opposed the adoption and shortly thereafter they came to Louisiana and employed an attorney to oppose the adoption and to recover the custody of the child. * * *
“After carefully reviewing the authorities submitted by able counsel for both relators and respondents, this court feels that the issues here presented are very much like the situation in State ex rel Deason v. McWilliams [227 La. 957], 81 So.2d 8. The Deasons, after the birth of their third child, decided that they did not want any more children, and Mrs. Deason had an operation to render her sterile, but in spite of this •she became pregnant again and concealed 'her pregnancy from everyone except her husband, even from her mother and other members of their families. Some three months before the birth of this fourth' child Mrs. Deason discussed privately with other persons in her community the matter of placing her unborn baby with someone else to rear and decided, with her husband’s knowledge and approval, to give the unborn baby to Mr. and Mrs. McWilliams who had no children of their own and who were anxious to adopt one. The Deason baby was delivered by Caesarian section and the infant was almost immediately given to Mr. and Mrs. McWilliams without his mother ever seeing him. The McWilliams paid all hospital and medical expenses, although the mother and father were themselves able to pay these expenses. The Deason’s executed authentic acts of surrender of the infant. Later the Deason’s sought to gain custody of this infant child from the McWilliams.
“After trial, the judge left the custody of the child with the McWilliams and the Deasons appealed to the Supreme Court where the case was affirmed on appeal; quoting from the syllabus:
‘Where parents, who did not care for any more children, gave infant son to defendants, who had custody of child from time he was a few days old, and parents, although financially and otherwise capable of caring for child, executed authentic acts of surrender in favor of defendants, welfare and best interest of child required that it remain in the permanent care and custody of the defendants’.
“In view of the courts decision in the above cited case and the record in this case, it is the opinion of this court that it would be to the best interest of the child that it remain in the custody of the respondents.”
In elaboration of the facts, the evidence clearly shows, as the appellants contend, that the natural parents, who had six other children, surrendered the present infant for adoption only because they were going through a financial crisis in their lives, with the father unemployed for about six months, the mother forced to work as a night waitress in order to support the family, and with past debts and fixed financing charges creating what they felt at the time to be an intolerable financial situation. However, as the appellees note, the natural parents were not actually in danger of starving, but were rather in danger of losing their home and their automobile and being subjected to deficiency judgments and mounting indebtedness.
The evidence also clearly reflects that the natural parents are persons of good moral character and are able to afford the infant a decent home with its six natural brothers and sisters.
*767 Conceding that the defendant foster parents are also persons of high moral character and also able to afford the child a fine home, the natural parents contend that, under the law of Louisiana and under the circumstances shown, they have the primary right to the custody of their natural child over the foster parents to whom they had surrendered the child immediately after its birth in a soon-repented action. The natural parents further point out that the foster parents will never be able to adopt the child without their consent (which has been held to be a relevant circumstance in determining the child’s best future welfare), and that within a matter of weeks (as soon as they learned where their infant had been taken) they communicated with the foster parents to seek the return of their natural child in order to raise it with its brothers and sisters.
Counsel for the natural parents contends that the pertinent legal principles to apply in the instant case is as stated in State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760, as well as in several other decisions. In the cited case, the Supreme Court reversed the determination of the trial court and restored the custody of a 20-month old child to its natural mother, who had during a period of illness and financial necessity surrendered the child for adoption to the defendant foster parents. In ordering the return of the child to its natural mother, the Supreme Court stated, 46 So.2d 761-762:
“In such cases, the sole question for the court’s consideration is whether the parent by his or her conduct has forfeited his or her parental right to the child, for it is the well settled jurisprudence of this state that the courts are not authorized to interfere with a parent’s authority over his or her children, except if the court is satisfied that he, or she, will neglect them or expose them to improper influences, in which case the paramount interest which society has in seeing to it that they be well taken care of and properly brought up would justify the court in making some other disposition of them, * * * and the burden is on those resisting the parent’s right to show his or her disqualification or unfitness to have the custody of the child. * * * [Citations omitted].”
In a series of unusually comprehensive and eloquent briefs, counsel for the appellants reviews the pertinent jurisprudence and summarizes decisions on the question as follows:
“The [natural] parents’ right to the custody of their child cannot be deemed forfeited unless the party opposed to the right can clearly prove that: (1) The parents will subject the child to abuse, neglect or improper influences, Martin v. Garza [217 La. 532], 46 So.2d 760 (Sup.Ct. of La. 1950); State ex rel. Simpson, et al. v. Salter, et al. [211 La. 918], 31 So.2d 163 (Sup.Ct. of La., 1947) ; State of Louisiana ex rel. Barbara Hebert v. Ashton Knight, et ux., 135 So.2d, 126 (Ct. of App. 1st Cir., 1961); State of Louisiana, ex rel. Mrs. Jimmie Cockerham v. Pearce Jordan and Mrs. Vinia Jordan, 134 So.2d 81 (Ct. of App.La. 2d Cir., 1961) ; or (2) that the parents have voluntarily given up the child to third parties and actually do not love the child or want the child back, State ex rel. Hubert M. Deason, et ux. v. Maurice W. McWilliams, et ux. [227 La. 957], 81 So.2d 8 (Sup.Ct. of La. 1955); or (3) that the parents voluntarily permitted the child to remain in the custody of third persons for several uninterrupted years and actively neglected the child during those years, State ex rel. Guinn v. Watson [210 La. 265], 26 So.2d 740 (Sup.Ct. of La. 1946); State ex rel. Graham v. Garrard et ux. [213 La. 318], 34 So.2d 792 (Sup. Ct. of La., 1948); State of La. Steve Paul, et al. v. Horace M. Penniston [Peniston], et al. [235 La. 579], 105 So.2d 228 (Sup. Ct. of La., 1958) ; State ex rel. Hampton v. McElroy, 141 So.2d 666 (Ct. of App.La., 1st Cir., 1962) * * *."
We readily agree that the cited jurisprudence is open to the interpretation thus placed upon it by the appellants.
However, and although our views conflict with those recently expressed by our *768 learned brothers of the Second Circuit in State ex rel. Cockerham v. Jordan, La.App., 134 So.2d 81, we nevertheless agree with the trial court -that the Supreme Court’s decision in State ex rel. Deason v. McWilliams, 227 La. 957, 81 So.2d 8, is susceptible to a broader interpretation
In the Deason case, the natural parents sought the return of their child a little over a month' after it was surrendered. Nevertheless the Supreme Court affirmed the trial court’s dismissal of the proceedings brought by the natural parents to obtain the return of the child from the foster parents to whom they had surrendered it.
We agree with the trial court that the decision seems to hold broadly that natural parents, who voluntarily and with complete comprehension of their act surrender a child to foster parents with the intention of placing the child permanently with such foster parents to be raised as their own, ordinarily cannot later obtain the return of the child from the foster parents simply because the natural parents later change their mind and now regret having surrendered their child. In such an instance, when the child has been raised as a member of of the family of the foster parents since soon after birth, the cited decision seems to hold that the best welfare of the child is presumed to be served by leaving it in the decent foster home in which it has been raised since birth and in which it is loved as a child of the family.
The appellants also rely with some confidence upon decisions such as State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760, and State ex rel. Simpson v. Salter, 211 La. 918, 31 So.2d 163. In the cited cases, the Supreme Court reversed contrary determinations of the trial court and ordered the return of the children concerned to their natural parents.
However, in these cases the court found that the parents had never intended to surrender the child permanently to the foster parents; the decisions therefore involve a factual circumstance which may be distinguishable from the present situation. The cited decisions, further, were rendered prior to the subsequent development of the jurisprudence relative to the rights of natural parents versus foster parents to whom the child had been voluntarily surrendered, as represented by the more recent Supreme Court decisions in State ex rel. Paul v. Peniston, 235 La. 579, 105 So.2d 228, and State ex rel. Deason v. McWilliams, 227 La. 957, 81 So.2d 8.
For the foregoing reasons, we find no abuse of discretion by the trial court, and we affirm its dismissal of the present custody proceedings brought by the natural parents to obtain the return of their child. The costs of this appeal are to be paid by the appellants.
Affirmed.