ELLIS, Judge
(dissenting).
It must be borne in mind in considering this case that it is a suit for the custody of Betty Jo Courtney, age 13, Davie Lee Courtney, a retarded child, age 9, and Jackie Marie Courtney, age 8, by the plaintiff-mother against the defendant-stepmother. The father had originally secured a divorce and custody of the children’from the plaintiff-mother in a prior suit on the ground of adultery, had married the defendant-stepmother and had lived with her for approximately two and one-half years on the date of his death, October 24, 1963. On the date that he died the plaintiff- *496 mother had not remarried but did so on November 5, 1963 and within several weeks after the death of the father she filed a suit against the surviving defendant-stepmother seeking the custody of her three children. However, on November 22, 1963, judgment was rendered denying her the custody of her children and granting the custody to defendant-stepmother. Neither of the records in those two suits was introduced or made a part of the record in the present suit. Any knowledge of the facts or issues in those two prior suits, insofar as this court is concerned, was obtained by virtue of questions propounded by the members of the court during argument. For example, we were told that the father obtained the custody of the children in the same suit that he secured a judgment of divorce on the ground of adultery. However, the word adultery is not mentioned in the present suit, although the lower court, in questioning plaintiffs witnesses at various times and at length, was, I am sure, referring to that fact without specifically stating it. Whether the suit for divorce by the deceased father was contested I do not know but I gained the impression that it was not from the argument. This suit is immaterial and should not be considered in arriving at a proper decision in this case between the mother and stepmother. Liner v. Liner, 222 La. 789, 64 So.2d 4. However, if it is considered, there is some testimony brought out by the court during its examination of Mr. Julius Graham, witness for the plaintiff, touching upon'the question, as follows:
“BY THE COURT: Do you know any of the circumstances about the manner in which Mrs. Lott was deprived of the children?
A: Well, now everybody in the country * * *
BY THE COURT: Now wait, I am just asking do you know of the facts in connection with her having been deprived of the children?
A: Well that girl was beat 'and knocked around and just drove away from home by being beat.”
The above testimony stands in the record unrefuted and without any further question or proof to the contrary. . .
I gained the impression from the argument that there was no question of the moral unfitness of the mother in the suit which she filed immediately after the death of the father to obtain the custody of her children from the defendant-stepmother. The record does show that the father and mother of the deceased husband, the paternal grandfather and grandmother of the children involved in this custody suit, testified in the prior custody suit between these parties on behalf of the defendant-stepmother but there is not one line of testimony in this record that they testified in that suit that this plaintiff-mother was morally unfit to have her children. It is to be remembered that both of them are testifying now on behalf of the plaintiff-mother and stated that at the time of their son’s death the plaintiff-mother herein was not married, but was before the suit was tried and decided, and at that time they admit they asked the Judge to award the custody to the defendant-stepmother as they thought their son would have wanted it that way. As a matter of fact, one gains the impression from reading this record that the main reason the lower court awarded the custody of these children to the stepmother in the first suit immediately after the death of the father was due to the testimony of these grandparents who are now testifying for the plaintiff-mother and who give good sound reasons for doing so in this case. According to this record,, they did not testify that the mother was morally unfit in the prior case or that it was even an issue in the prior case. The record in the prior suit for custody between this mother and stepmother was not filed and made a part of this record.
*497 I note in the majority opinion the following statement:
“On the other hand, Respondent has made no effort to re-introduce evidence of Relatrix’s alleged moral unfitness which issue was considered in the previous contest between the litigants in which Respondent was granted custody. Instead, appellee relies upon the judgment rendered in November, 1963, by which she was awarded custody.”
As previously stated, we do not have the record in that suit and there is not one line of testimony in the present record that shows that the issue of the moral unfitness of this mother was even put at issue in the previous contest.
I believe the testimony of the grandmother and the grandfather supports my contention that the moral unfitness was not an issue or made an issue and if it were it was not proven in the prior case. The grandmother, testifying on behalf of the plaintiff-mother in this case, was examined by the Court as follows:
“BY THE COURT:
Q: Mrs. Courtney for the sake of the record you and your former husband, paternal grandfather of the children, are the same persons who were concerned about the custody hearing that was held on November 21st of this past year. At that time you were very much interested in Mrs. Mary Courtney having the children, is that correct?
A: That is right.
Q: Now, I gather from your testimony at this time that your main concern is that you have not had as free access to the children as you think would be proper. You are not in a sense testifying against the character or the conduct of Mrs. Mary Courtney, except with respect to how it affects your relationship with the children?
A: Yes, I think that is a lot of it, and another thing I think the children should be taught more to respect everybody, and associate with people more. They just don’t act like they * * *
Q: I think the essence of your testimony has been that they associate with people quite freely but that you have noticed a sort of pulling away from you?
A: That’s right, from the whole family.
Q: However, on November 21, and even before that you and Mr. Courtney were greatly interested in seeing that Mrs. Mary Courtney retained the custody of the children, and you felt that was the way your son would have wanted it, is that correct?
A: I did then.
BY THE COURT: Now in view of her statement would you like to question her?”
Immediately thereafter Mr. Ponder on re-direct questioned Mrs. Courtney further as follows:
“MR. PONDER: Yes.
Q: Mrs. Courtney, now why have you reversed your position so to speak with reference to where you think the children should be?
A: Well, I said at the beginning, I thought they should stay at home, down where where they had a home and everything. Bernice was not married then and she did not have a home, and since everything has turned out like this and it has not worked out like we thought it was going to work out' — - not that I want to tell Mary how to raise the children, or anything like that, I don’t, but I did want them to respect their family, you know, and I thought they would, but that has all been cancelled out, they don’t. I think now that since Bernice has got a home *498 and all I think they would be much better off with her.
BY THE COURT: Is it not true Mrs. Courtney that at the time, on the last hearing', that Mr. and Mrs. Lott had been married, that Bernice did have a husband?
A: Well, they were then, but they were not when the children’s father died.
Q: The father died on October 24, 1963, and between that date and November 21, 1963 Mrs. Lott had married ■ Mr. Lott ?
A: They were planning to get married but they had not told me anything about it — I didn’t know.
BY THE COURT: That is all. ■
MR. PONDER: One other question. The Court asked you the question about if you were here to testify to anything that would make you think that Mrs. Mary Courtney was morally unfit to raise the children, now do you have any remarks to make about that? ■
BY THE COURT: Now, you do not mean ‘remarks’ you mean facts.
A. Well, I do not think they should be took out and brought in all times of the night like that. I think that that is not right. I think that there could be a lot of changes made.
BY THE COUNSEL: That is all.”
We find the paternal grandfather of the children testifying in this case on the questioning by the Court as follows: ;
“BY THE COURT:
Q: Mr. Courtney, this of course is with reservation to your objection Mr. Ponder — you as the . paternal -grandfather was very much concerned about the present Mrs. Mary Courtney being awarded the temporary care, custody and control of the three children back on November 21st of this year, were you not?
A: Yes sir.
Q: At that time Mrs. Lott the mother of the children was trying to obtain their custody?
A: Yes sir.
Q: And you were positive in your mind at that time that the interest of the children would be best served as being maintained in. the care, custody and control of Mrs. Mary Courtney?
A: That is right, I came and asked you to do that.
Q: But the circumstances are now such that you feel that you have been deprived of the'- society of the children ?
A: That’s right, I have.”
It would appear to me that the failure to ask these grandparents, who testified in the prior case for the stepmother immediately after their son died, any question touching upon the moral unfitness of the plaintiff-mother in this suit during the trial of this case, or as to their testimony on this issue in the previous trial, is proof that the moral unfitness of the mother was not an issue in the prior suit between these parties for I cannot imagine the attorney for the ' defendant-stepmother failing to bring out such a fact had these grandparents so testified in the prior suit. .Neither did the lower court when questioning the grandparents ask them if they had not testified to the moral unfitness of the mother in the prior suit.
In the present suit the main allegations of defense in the defendant-stepmother’s answer are set forth in Articles 10, 11, and 12, which are as follows:
“10.
“That respondent does have the custody . of the said children, and that said custody was awarded to respondent by *499 judgment of this Honorable Court dated November 22, 1963, in suit number 12,911.
“11.
“That relatrix is not entitled as a matter of right to the custody of said children.
“12.
“That relatrix is not a fit and proper person to care for the children or to have the custody of said children.”
It could be that in the prior suit the same allegation as in 12 was made but possibly handled in the same manner as in the present suit which contains no testimony, not even a line, that the plaintiff-mother was unfit or an improper person to have the custody of her children. No attempt was made to prove this allegation of the petition although it was specifically made an issue by the defendant. The grandparents testified that they were now supporting the custody suit of the plaintiff-mother as they had changed their minds because the defendant-stepmother was estranging the children from the entire Courtney family and this record proves that fact. It is the testimony not only of the grandparents but the brother of the deceased and the aunts and uncles of the children that they have known the plaintiff-mother and her husband all their lives and that she is fit, has a nice home and not one iota of testimony even on cross-examination that the mother is morally unfit or that the husband is not financially able to take these children into the home. Additionally, the husband of the plaintiff-mother wants the - children and testified that he and his wife can never have any children. All of these relatives of the children testified that the defendant-stepmother goes out a good deal at night, the children are not ever placed with any of their blood relatives but with friends of the stepmother. It is shown that she attends night clubs and at times comes in late at night. 'There is-no testimony that the children are left alone at these times, however, and the main complaint which seems to have been proven is-to the effect that this stepmother has and is attempting to estrange these children from their father’s blood relatives and there is no doubt that she is seeking another husband, which, when acomplished, can bring on grave problems for these stepchildren of hers.
Without fear of contradiction, the record in this suit abounds, and preponderatcly so, with complete proof that the plaintiff-mother is absolutely not only morally fit but in every other way and by every test, and that they have a nice suitable home and enjoy the respect of the people in the community. The mother kept these children awhile even after the original divorce and immediately after the death of the father sought to obtain the custody of the children from the stepmother. There is no question from this record of the mother’s love and affection for these children. On the other hand, there is no question in my mind that the children are deliberately being estranged from their mother, from their grandparents and their aunts and uncles, brother and sisters-in-law of the deceased father.
The law of this State regarding custody is not in doubt. In an initial determination of custody the mother has the prime right to the custody of the minor children and cannot be deprived of that right unless proven unfit. Lyckburg v. Lyckburg, La.App., 140 So.2d 487, Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456, Liner v. Liner, 222 La. 789, 64 So.2d 4; in the last cited case, the Supreme Court through Chief Justice Fournet stated the settled law and jurisprudence as follows:
“Under the well settled jurisprudence of this Court the right of the mother to the custody of the minor child is paramount to that of the father, except in those cases where she is found to' be morally unfit or where, in very exceptional instances, she is found to *500 be incapable of taking care of the child. See White v. Broussard, 206 La. 25, 18 So.2d 641, and cases cited therein; Willis v. Willis, 209 La. 205, 24 So.2d 378; State ex rel. Morrison v. Morrison, 212 La. 463, 32 So.2d 847; State ex rel. Diehl v. Ducote, 213 La. 641, 35 So.2d 415; Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456; Meyer v. Hackler, 219 La. 750, 54 So.2d 7; and Ane v. Ane, 220 La. 345, 56 So. 2d 570.
“An examination of the record in this case discloses a complete lack of evidence as to the mother’s unfitness as well as absence of any allegation that the mother is in any manner an unsuitable person. There is clearly no merit in appellant’s claim that the trial judge should have permitted questions by which his counsel sought to cast doubt on the legitimacy of a child born to appellee by a previous marriage, since such evidence could have no bearing on her present fitness. See State ex rel. Henry v. Lyons, 139 La. 273, 71 So. 507; cf. State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760. Appellant’s argument that the trial judge erroneously admitted and considered the unsworn report of the Juvenile Probation Officer avails him nothing, since the record, stripped of this report, is barren of any evidence which would render the mother unfit.”
Therefore, if I am correct that no issue was made of the mother’s moral unfitness in the prior suit for custody immediately after the father’s death between the present plaintiff-mother and present defendant-stepmother, under the law, the mother should have been awarded these children in the prior suit rather than the stepmother. She would have been entitled even as against the father to the custody of her children unless proven morally unfit at the time of the trial.
It is argued, however, that as there was no appeal from the prior judgment it has become final and is presumed to be correct. There is no evidence as to why an appeal was not taken in the prior case but I think it is immaterial as it is the settled jurisprudence that in a case involving the custody of children the primary concern of the court is the best interest of the children. Failure to take an appeal in a prior case in no way deprives the court in another suit of considering the welfare and best interest of the children and awarding custody accordingly.
The majority contends that there is an exception to the general rule that in a custody matter the mother is preferred above all others, unless she is shown to be morally unfit, but in those cases wherein a change is sought in an order of custody previously granted, the party seeking modification of such custody award must show a material change in the facts which would entitle such party to the custody. This is correct and has been fully satisfied by the facts proven on the trial of the present suit.
As I view this case, there was no issue of the moral unfitness of the mother at issue or proven in the first case and upon the death of the father there was a definite change, and that suit was a contest between a mother who was morally fit and a stepmother and the former should have been awarded the custody of the children at that time. However, for the sake of argument, if the case must rest upon proof of a change and there were grounds (moral unfitness) in the first suit between these parties, immediately after the father’s death to grant the custody of these children to the stepmother, not one exists or has been proven in the present suit and it fully satisfies the law as stated in the case relied upon by the majority, Gentry v. Gentry, La.App., 136 So.2d 418 and cases therein cited, to the effect that a party seeking modification of a previous custody decree bears the burden of proving any material change in conditions, also proving that present conditions and circumstances are detrimental and inimicable to the child’s *501 welfare. If, as contended by the majority, the moral unfitness of the mother was an issue in the first suit and sustained, which the writer believes in error, the present suit fully and completely shows the absolute moral fitness by positive testimony and the total absence of any testimony to the contrary, of the mother of these children, the suitability of the home, the love and affection of the mother, the desire of the stepfather that the mother have the custody of these children, his financial stability, although the children receive $190.00 a month Social Security[1] from their deceased father, and the excellent reputation in the community of the mother and her husband, Earl Lott. Secondly, this record proves that the present conditions and circumstances are detrimental to these children’s welfare. They are being deliberately estranged from the blood relatives of their father and from their own mother by a stepmother who is seeking another husband who would be stepfather to these children. Under these proven facts, these children should be placed now with their mother. In my opinion, the plaintiff-mother has borne the burden of proving both conditions.
By way of answer to the statement of the majority that “Considering the present matter in the light of the rules hereinabove found applicable, we note that relatrix herein neither alleged nor attempted to show any change in the conditions which led to granting of custody of the children to respondent. Relatrix showed she is remarried and financially able to care for the children but these same conditions existed at the time custody was awarded respondent”, I do not agree that relatrix has only Shown that she is remarried and financially able to care for the children although I am sure these two conditions existed at the time custody was awarded respondent. If there was no change in conditions proven on the trial herein and the former contest for custody, the former judgment was erroneous, for plaintiff-mother has proven beyond any question by the overwhelming preponderance of the testimony in this record which satisfies every legal requirement that she is entitled to the legal custody of her children and judgment should be rendered accordingly.
I am firmly of the opinion that the judgment below, as well as the majority opinion herein affirming that judgment, is erroneous under the law and the facts. I respectfully dissent.
BAILES, J., concurs in dissent.

. The stepmother has no other means whatsoever hy which she could support these children. She has approximately $60.00 per month additional social security income. She does not have enough to support herself, and unless she succeeds in marrying an industrious stepfather for these children all may be living upon the children’s social security payments.