AYRES, Judge.
The custody of James Everett Wren, Jr., an 8-year-old child, is the subject matter of this contest between its father and maternal grandmother. This matter comes before this court on the application of the maternal grandmother, Mrs. Amrie Lee Baldwin Butler, and of the maternal great grandparents, Mr. and Mrs. John Robinson, granted for the purpose of affording the court an opportunity to review the propriety of the action of the trial court in awarding custody of the minor to his father, James Everett Wren.
The issues presented for resolution relate to the father’s ability, capacity, and fitness to care for the minor. Concerned also are the father’s actions which allegedly evidence an abandonment of the child by him.
James Everett Wren, Jr., was born on July 12, 1966, of the marriage of plaintiff, James Everett Wren, and Bonnie Eloise Wren (nee Baldwin). Soon after the child’s birth, the mother and father separated. In an action for divorce instituted by Mrs. Wren, she was awarded custody of the child, after which, however, it appeared she was not particularly interested in a divorce, which was thereafter pursued by the husband who obtained a final judgment of divorce on November 13, 1968. According to plaintiff’s testimony, Bonnie “dropped” the proceedings after she obtained custody of the child, but he then “followed through with it” and obtained the divorce by default. Soon thereafter Mrs. Wren remarried and lived in a mobile home near her parents and grandparents.
The evidence makes it clear that though the mother had the legal custody of the *750 child, the child in reality lived with Mrs. Butler, its grandmother, and her husband in close proximity to the child’s great grandparents, Mr. and Mrs. John Robinson, who lived nextdoor to Mr. and Mrs. Butler. This custody, care, attention, and support began soon after the child was born. The child’s mother, however, died on June 3, 1974, while undergoing surgery in a Shreveport hospital. This proceeding, in the nature.of a habeas corpus, was filed on August 9, 1974, through which the father sought to obtain custody of his minor son.
There is no question of the fitness, qualifications, and ability of the grandparents to look after, care for, and furnish the minor with a good home. Although not made an issue, the record, in our opinion, adequately establishes their aforesaid qualifications.
Defendants’ primary contention is that plaintiff has forfeited his parental right to custody since he has had very little contact with his son or shown any interest in him for the past eight years. During the lifetime of the minor, plaintiff has resided in the City of Minden; the child, in Dubberly, Louisiana, a few miles away. By his own testimony, plaintiff claims that he has mailed the child only one or two cards and furnished him,’on one occasion, with $2.00. This parent never visited his son, nor did he show any apparent interest in the child’s welfare.
Plaintiff has, however, since his divorce, remarried, and of that marriage one child was born. From the record it can only be concluded that he and his present wife and their child reside with his mother and father. Plaintiff sustained serious disabling injuries in a car wreck in 1966. Since then he has suffered lapses of memory; he is unemployed, and his only income is what he receives in disability checks. Plaintiff has not maintained a stable marital relationship with his wife. From time to time they have separated. Her physical and mental condition is poor. As a result of the latter condition, she has, on an occasion, been confined to a state hospital located at Pineville.
It may be pointed out, though not controlling, that the child’s preferences are that he remain with his grandparents. He is happy in his present home and in school among his friends in Dubberly. His grades in school are excellent, in the range of A’s and B’s. The child had a violent reaction when officers from the Sheriff’s Department attempted to deliver him to his father, who is a total stranger to him. The child could not identify his father in the courtroom.
The general rule is that in contests between a parent and a nonparent for the custody of a minor, the parent’s right is superior unless the parent is unable or unfit to care for the child or has forfeited his parental rights. State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760 (1950); State ex rel. Simpson v. Salter, 211 La. 918, 31 So.2d 163 (1947); State ex rel. Martin v. Talbot, 161 La. 192, 108 So. 411 (1926); Ex parte Lincoln, 128 La. 278, 54 So. 818 (1911). See, also: State ex rel. Lombardo v. Miller, 232 La. 617, 94 So.2d 888 (1957).
From the record in the instant case, it appears that the father is unable to support the child because of his physical condition due to accidental injuries received by him, and to his inability to earn a living. Moreover, the conclusion is inescapable that plaintiff, .due to his unstable marital relationship and the infirmities of his wife, is not in position to care for the minor, properly support him, and send him to school. Finally, we conclude that, for the reasons herein assigned, plaintiff has effectively abandoned his child. For almost eight years his actions evidenced a total lack of interest in the child and its welfare.
In Robertson v. Robertson, 243 So.2d 847 (La.App., 2d Cir., 1971), this court held that where a father placed his two children in a sister’s home, following a separation between him and his wife, and where their *751 mother failed to take any action to gain custody of the children for more than four years, the mother had forfeited her right to their custody; that the sister, who had been continuously employed for seventeen years and who was assisted by her mother in caring for the children, was entitled to their custody.
In State ex rel. Hampton v. McElroy, 141 So.2d 666 (La.App., 1st Cir., 1962), the Court of Appeal, First Circuit, held that a mother was not entitled to custody of a child where she had left the child with its aunt and uncle for more than eight years without any effort to seek the return of the child to her custody — where the aunt and uncle were able to and were giving the best attention to the child who was happy and in good moral and physical condition.
In State ex rel. Paul v. Peniston, 235 La. 579, 105 So.2d 228, 229 (1958), a habeas corpus proceeding was instituted by the parents for the custody of their 11-year-old daughter, who had lived in the home of her paternal aunt and the aunt’s husband since two years of age, when the child’s mother was hospitalized by pulmonary tuberculosis from which the mother had sufficiently recovered to lead a normal life. There was judgment in the trial court awarding the custody of the child to the aunt and the aunt’s husband. From that judgment the parents appealed. The Supreme Court held that the evidence disclosed it would be to the best interest of the child to permit her to remain in the custody of her aunt and the aunt’s husband. The Supreme Court in the cited case, through Justice Hamiter, pointed out that:
“The legal principles governing the instant dispute are well stated in State ex rel. Deason v. McWilliams, 1955, 227 La. 957, 81 So.2d 8, 9, as follows: ‘As this is a habeas corpus proceeding, the custody of the child is the sole issue to be decided by this court. We have consistently held that, although parents have a paramount right to the custody of their minor child, this right is not an absolute one and must yield to the superior right of the State to deprive a parent of the custody of his child if the best interest and welfare of the child require it. * * * In State ex rel. Harris v. McCall, 184 La. 1036, 168 So. 291, 292, this court said:
“ ‘ “Although parents have a natural right to the custody of their children, nevertheless the state has an interest in children which goes beyond the mere paternal right. In all cases involving their custody, the welfare of the children must be considered, and should prevail over the mere parental right to their possession. * * * ”
“ ‘As we pointed out in State ex rel. Guinn v. Watson [210 La. 265, 26 So.2d 740], supra, the courts of this state have invariably followed the rule that the ivel-fare of the child is of paramount importance in determining who is entitled to its custody in a case of this kind. * * * Moreover, it was recognized in State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760, that by his conduct a parent can forfeit his parental right to the custody of his child.’ ” (Emphasis supplied.)
From the established facts in the instant case, it would appear that the aforesaid principles have application to this cause and not only warrant but compel a reversal of the judgment of the trial court.
For the reasons assigned, the writs heretofore issued are now perpetuated and made final; and, accordingly, the judgment of the trial court is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed that there be judgment herein in favor of Mrs. Amrie Lee Baldwin Butler against plaintiff, awarding her the care, control, and custody of the minor, James Everett Wren, Jr., at the cost of plaintiff-respondent.
Reversed and rendered.